# CASES DETERMINED

BY THE

# SUPREME COURT

OF THE

# STATE OF MISSOURI

AT THE

APRIL TERM, 1896.

---

(*Continued from Volume 134.*)

---

THE STATE *ex rel.* WALKER, *Attorney General*, v.
DOBSON, *Judge.*

Division Two, June 16, 1896.

1. **Habeas Corpus:** PETITION: PLEADING. A writ of *habeas corpus* can not issue where the petition therefor fails to state all the facts concerning the imprisonment or restraint, and the true cause thereof (R. S. 1889, sec. 5346), or where the warrant of commitment does not accompany the petition and no excuse is pleaded for its absence (*Ib.*, sec. 5347), or where it appears from the petition that the petitioner is held by virtue of a judgment of conviction of murder in the first degree, rendered by a court of competent jurisdiction. (R. S. 1889, sec. 5379).

2. ——: ——: ——: PRACTICE. A petition for *habeas corpus* must, on its face, show probable cause, and where it appears from the petitioner's own showing that there is *prima facie* no ground for his discharge, the court should refuse to issue the writ.

3. ———: JUDGMENT: JURISDICTION: JUDICIAL NOTICE: PRESUMPTION. Where a court giving judgment in a criminal cause was legally constituted, organized, and established, and had general jurisdiction in all criminal cases, another court in passing upon a petition for a writ of *habeas corpus,* asking relief from the judgment and sentence of the former, is bound to take judicial notice of its constitution and jurisdiction, and presume the correctness of its action in the given case.

4. **Judgment:** COLLATERAL ATTACK: HABEAS CORPUS. The judgment of a court of competent jurisdiction can not be defeated or overthrown by a collateral attack; and the same rule prevails regarding a judgment rendered in a criminal cause by a court of general criminal jurisdiction, when assailed by the issuance of a writ of *habeas corpus,* as in the case of a collateral attack made upon a judgment rendered in similar circumstances in a civil suit.

5. **Habeas Corpus:** REFUSAL TO ISSUE WRIT: PENALTY. The penalty provided by Revised Statutes, 1889, section 5402, for refusal to issue a writ of *habeas corpus* can, by the terms of the statute, only be exacted in cases where the writ "may lawfully issue."

6. ———: ———: ———. The legislature has no power to provide a penalty for a judge or court denying a writ of *habeas corpus,* when such denial is the result of an honest purpose to discharge judicial duty.

7. **Supreme Court, Powers of:** SUPERINTENDING CONTROL OF INFERIOR COURTS: CERTIORARI. Under section 3, of article 6, of the constitution, empowering the supreme court to exercise superintending control over all inferior courts, and for that purpose to issue writs of *habeas corpus, quo warranto, certiorari,* and other original remedial writs, and to hear and determine the same, *certiorari* will issue on application of the attorney general to review an order of an inferior court granting a writ of *habeas corpus* on the petition of persons imprisoned under a sentence of death, where the petition for the writ shows that the inferior court was without jurisdiction.

8. **Habeas Corpus:** ISSUANCE OF WRIT: PRACTICE. A petition for a writ of *habeas corpus* by a private individual must show cause therefor, and the writ will not issue except in the exercise of a sound judicial discretion, but where it is applied for by the attorney general it goes as a matter of course and of right.

### *Certiorari.*

PROCEEDINGS QUASHED.

*R. F. Walker,* attorney general, for relator.

This is a proceeding by *certiorari* commanding respondent to certify to this court a certain petition for

State ex rel. v. Dobson.

a writ of *habeas corpus* filed before him by Foster Pollard and Frank Harris. (1) The petition for *habeas corpus* filed in this cause is incomplete, imperfect, and does not conform to the rules of pleading applicable to cases of this kind. It does not set forth facts sufficient to enable the judge to whom it is directed to act intelligently in the case; it does not set out a copy of the warrant of commitment, nor the authority under which the petitioners are held. Church, Hab. Corp. [2 Ed.], sec. 91, and cases cited; secs. 5346, 5347, R. S. 1889; *Ex parte Deny*, 10 Nev. 212; *People ex rel. v. Cowles*, 59 How. Pr. 287. (2) The facts set forth in the petition constitute nothing more than a supplemental motion for a new trial, and are improperly pleaded in a petition for a writ of *habeas corpus*. No court, under the provisions of our *habeas corpus* act has power to inquire into the legality or justice of a judgment of a court of competent jurisdiction; this court will take judicial notice of the fact that the criminal court of Jackson county, in which the petitioners were convicted, is a court of general jurisdiction as to all criminal prosecutions. Sec. 5379, R. S. 1889; *Com'r v. Lecky*, 1 Watts, 67. A writ of *habeas corpus* can not be made to perform the functions of a writ of error or an appeal. Brown, Jurisd., sec. 104; Church, Hab. Corp., sec. 196. (3) The court is not bound to issue a writ of *habeas corpus* as a matter of course; a statement of facts showing probable cause must precede the obtaining of the writ, whether it be granted at common law or under a statute. *Sims* case, 7 Cush. 285; *Watkins* case, 3 Pet. 201; Church, Hab. Corp. [2 Ed.], sec. 92, and cases cited. (4) The court in which petitioners were convicted was legally constituted, and this court will take judicial notice of the fact that it is of general jurisdiction in criminal matters; it is immaterial, then, whether its records show these recitals or

not; its proceedings will be shielded from collateral attack, such as is sought to be made by the institution of the *habeas corpus* proceeding.   Van Fleet, Coll. Attack, sec. 304; Cooley, Const. Lim. [6 Ed.], 500; *Guignon v. Astor*, 2 How. 319; *Ex parte Watkins*, 3 Pet. 193; *Daniels v. Powers*, 79 Ga. 785.   (5) Under our constitution the powers of government are divided into three distinct departments, and it is to be seriously questioned whether the legislature has power to subject a judge of a court of record to a penalty in favor of the party aggrieved, for refusing to grant a writ of *habeas corpus*.   Section 5402, Revised Statutes, 1889, which attempts to provide a penalty of $1,000, is clearly unconstitutional.  Any other construction would destroy the independence of the judiciary.   Judges should not be exposed to private action for damages for anything they may have done as judges. · *Cooke v. Bangs*, 31 Fed. Rep. 640; 1 Jaggard, Torts, 120, 121; *Bradley v. Fisher*, 13 Wall. 335.   (6)  A writ of' *certiorari* is proper in this case to compel respondent, who had improperly entertained a writ of *habeas corpus*, to forward the petition and all other papers connected therewith, to this court.   At common law *certiorari* was issuable before the proceedings instituted had ended in a trial, order, or judgment.   The issuance of the writ was based on the excess, or lack, of jurisdiction of the court from which the proceedings were sought to be removed. Harris, Cert., sec. 8; Comyns, Dig. [4 Ed.], entitled, "*Certiorari;*" Spel. Extr. Rel. [2 Ed.], sections 1926–1928; 1 Tidd, Pr. [4 Am. Ed.], 398; *Cross v. Smith* [2 Ed.], Raymd. 836.  Where the writ of *certiorari* is applied for by the state, as in this instance, it goes as a matter of course.     4 Encyclopedia Plead. Pr., 37; *State v. N. J.*, etc., 19 Atl. Rep. 976.  The object of the writ at common law was to keep inferior tribunals within bounds. 4 Encyc. Pl. Pr., 91, and cases cited.

Under our constitution, the supreme court has a superintending control over all inferior tribunals. Const. Mo., art. 4, sec. 3. The errors complained of in this case are of record, and jurisdictional in their character; this court may, therefore, examine them and grant the writ asked for. *State v. Smith*, 101 Mo. 174.

*Roberts & Roberts* for respondent.

SHERWOOD, J.—One of the judges of this division, at the instance of the attorney general, issued a writ of *certiorari* directed to respondent, commanding that he certify to this division of this court, a certain petition for a writ of *habeas corpus* filed before him by Foster Pollard and Frank Harris, together with all such other papers which were on file in said proceeding, or of record therein.

Complying with our said writ, in obedience thereto, the respondent certified to this court the petition aforesaid and all accompanying papers, etc., on inspection whereof we entered a judgment and order quashing said *habeas corpus* proceedings, and now, as is proper, we proceed to give the reasons which dictated our said action.

The petition presented to the circuit court praying for the writ of *habeas corpus*, after stating that petitioners are unlawfully deprived of their liberty by Keshlear, marshal of the criminal court of Kansas City, Missouri, proceeds to state in substance and effect the following matters, to wit:

That petitioners are unlawfully deprived of their liberty, etc.; that said imprisonment is illegal because petitioners were held by Walls, justice of the peace, to answer to the grand jury for the crime of manslaughter, and required to give bail in the sum of $1,500, to answer to that charge, when without any dismissal of

the charge of manslaughter, petitioners were indicted for the crime of murder in the first degree; that the grand jury which found the indictment was not selected and summoned according to law; that the indictment is insufficient in law because it does not charge that petitioners were guilty of murder in any degree, the indictment consisting of allegations necessary to prove the crime of murder in the first degree; that the names of all the witnesses before the grand jury were not indorsed upon the indictment; that petitioners were not able at the time of the trial to procure the evidence they desired; that they were convicted on perjured testimony, and have recently discovered the means of proving this; that petitioners are not guilty of the crime charged against them, and can prove it; that they are under sentence of death, to be executed May 15, 1896; that the court had no jurisdiction of the persons of petitioners, nor of the offense charged against them, etc., etc.

The following is the return to the writ of *certiorari:*

"In obedience to the within writ I herewith return and cause to be transmitted to the clerk of the supreme court the original petition and all the papers in and pertaining to the matter of the *habeas corpus* referred to in said writ. Also a certified copy of the order of the Jackson county circuit court, entered of record in said cause, as fully as the record and files remain before me.

"I further return and certify that the writ of *habeas corpus* referred to was issued by me about 7 o'clock of the evening of May 14, after a conference with my associates on the circuit bench of the sixteenth judicial circuit, and with their consent and approval, both as to the time fixed for the return of said writ, as well as the issuance of the same. My associates referred to are Judge EDWARD L. SCARRITT, presiding

in division number one; Judge JAS. H. SLOVER, presiding in division two, and Judge JOHN W. HENRY, presiding in division four of said circuit court at Kansas City, and each and all of said judges were invited, and expected, to sit at the hearing upon the return of said writ. I further return and certify that it was distinctly understood between myself and the attorney for the petitioners that, if they were not remanded into custody, they would, under no circumstances be discharged until the supreme court of Missouri should pass upon any questions the circuit court might find to be involved.

"Given under my hand this May 16, 1896.

"CHARLES L. DOBSON,

"Judge Sixteenth Judicial Circuit."

The first question for determination is the sufficiency of the petition for the issuance of the writ prayed for by petitioners and granted by the circuit judge.

It is to be remarked of the petition that it signally fails to conform to any known rule of pleading applicable to cases of this sort. Portions of it consist of mere legal conclusions; the residue of inconsequential statements which do not in any manner tend to affect or impair the jurisdiction of the trial court. As is observed by an author of acknowledged merit: "The application for a writ of *habeas corpus* should put before the court or judge facts enough to permit an intelligent judgment to be formed of the case. The rules of good pleading should be followed. Conclusions of law should be avoided. The petition should show in what the illegality consists, and this should be done by stating the facts showing it, as contradistinguished from a mere statement of a conclusion from the facts. Upon his petition for a *habeas corpus* the relator must state in his petition the cause of his detention, or for what

offense he was arrested, if any, and set out a copy of the warrant of commitment, or make affidavit that the jailor refused to give him a copy." Church, Hab. Corp. [2 Ed.], sec. 91, and cases cited.

Section 5346 of the *habeas corpus* act makes similar requirements because it declares that the petition for the writ "must state    *    *    *    all the *facts* concerning the imprisonment or restraint, and the true cause thereof;    *    *    *.    and, if the imprisonment be alleged to be illegal, the petition must also state in what the illegality consists." Here the petition states the *fact* of the imprisonment, but not the *cause* thereof.

And section 5347 requires that a copy of the warrant accompany the petition or an excuse be given for its absence, and there is no such averment nor excuse. Elsewhere it has been ruled under a section identical with the one just quoted, that by that portion of it which recites that "if the imprisonment is illegal," etc., the statute contemplates that the *facts* showing wherein the alleged illegality consists should be stated. *Ex parte Deny*, 10 Nev. 212.

In the case before us the petition does not state nor pretend to state "all the facts concerning the imprisonment and the true cause thereof;" there is not even an allusion to those facts or to the cause of detention contained in the petition. And where the statute requires a certain allegation in an application of this kind, the absence of such allegation is a fatal defect. *People ex rel. v. Cowles*, 59 How. Pr. 287.

And with regard to the alleged insufficiency of the indictment, the original, which accompanies the papers herein, and presumably was filed with the petition for *habeas corpus*, shows an instrument valid in every respect on its face. This amply refutes the allegations made as to its invalidity.

But for reasons to be now stated, we need not pause

to inquire whether the indictment was valid or not; whether the grand jury which presented it was properly summoned or not; whether the names of all the witnesses were indorsed on the indictment; whether defendants therein were able to procure the evidence they desired; whether they were convicted on perjured testimony, nor whether they were guilty of the crime charged against them, nor whether they can prove this.

All these things are, however, urged to show, and as a means of showing, that the court (what court is not stated) had no jurisdiction of the subject-matter or of the persons of the petitioners, or the offense charged against them, which latter matters are simply the statement of legal conclusions. It is however stated that the petitioners are *under sentence of death;* from this it must be *presumed* that judgment had been rendered against them by the criminal court of Jackson county, Missouri, inasmuch as they are said to be in the custody of the marshal of that court. And as pleadings are to be taken most strongly against the pleader, as courts of this state take judicial notice of the existence and jurisdiction of all courts in this state, and as sentence of death is the customary accompaniment and result of a judgment of a court possessed of criminal jurisdiction, the petition for *habeas corpus* in effect alleges that petitioners have had rendered against them for the crime of murder in the first degree a judgment and sentence of death by the criminal court of Jackson county, a court of competent jurisdiction, and this is the basis on which they ask to be discharged on *habeas corpus,* because they claim that that court had no jurisdiction of the subject-matter, etc., for the reasons stated in the petition as already set forth.

Section 5379, however, of the *habeas corpus* act declares: "But no court, under the provisions of this

chapter, shall * * * have power to inquire into the legality or justice of any * * * judgment * * * of any court legally constituted." That the criminal court of Jackson county is a court of general jurisdiction as to all criminal prosecutions, and therefore "legally constituted" is a matter of judicial notice.

Now, all the authorities hold that a petition asking the relief petitioners seek, must on its face show "*probable cause*," and when it appears from the party's own showing that there is no ground *prima facie* for his discharge, the court will not issue the writ. In short, the writ of *habeas corpus* is a *writ of right*, but *not a writ of course!* That cause must be show, is apparent as well from the authorities as from the language of section 5346, requiring that the petition "must state all the facts concerning the imprisonment or restraint, and the true cause thereof;" apparent also, from the language of section 5348 requiring that the writ be granted without delay "unless it appear, from the petition itself, or the documents annexed, that the party can neither be discharged nor admitted to bail, nor in any other manner relieved under the provisions of this chapter." The issuance of the writ is not a mere *perfunctory* operation. It is not to be "*had for the asking*." It is intended as a relief alone against *unlawful* imprisonment; and no imprisonment is unlawful when the process is a justification of the officer. *Com. ex rel. v. Lecky*, 1 Watts, 67.

*Judicial discretion* is as necessary in the issuance of the writ as in the issuance of any other writ whatsoever. It can only properly issue to one entitled to it either under the common law or under the statute. Were this otherwise, the writ would descend from its high plane, and its issuance become a mere ministerial act which could be performed by the clerk of a court as well as by the judge.

Prior to the year 1820, an erroneous opinion was prevalent that the court was *bound* to issue the writ as a matter of course and at all events, without using its discretion in determining the sufficiency of the grounds on which the writ was prayed. Since then, however, all the later rulings, both in England and America, establish that a statement of facts showing probable cause must precede the obtaining of the writ, whether it be granted at common law or under the statute. Sometimes, the court to avoid the vain and nugatory issuance of the writ, will grant a rule *nisi* at the outset, to show cause why the writ should not issue; and will not go through the barren formality of issuing the writ, when the inevitable result would be the remanding of the prisoner. These views, it scarcely needs saying, are supported by abundant authority. *Sims's* case, 7 Cush. 285; *Watkins's* case, 3 Pet. 201; Church, Hab. Corp. [2 Ed.], sec. 92, and other cases there cited.

In the case at bar, not only is there an entire failure to show probable cause why the writ should issue, but on the contrary thereof it is to be inferentially, but substantially, gathered from the petition that the petitioners are held by virtue of a judgment rendered against them, sentence of death pronounced against them, and a warrant for their execution issued and in the hands of the marshal. With some of these facts actually, the residue virtually, apparent on the face of the petition, a *prima facie* case was made out *against* petitioners and *probable cause* that they were *lawfully* restrained of their liberty, and that too, by the judgment of a "court legally constituted," since the circuit judge who granted the writ was bound to take judicial notice that the court rendering the judgment was legally constituted, organized, and established, and had general jurisdiction over all criminal cases, and was

therefore bound to presume the correctness of its action in the given case.

Section 5379 already quoted, is only declaratory of the familiar principle that a judgment of a court of competent jurisdiction can not be defeated or overthrown by a collateral attack. And the same rule prevails regarding a judgment assailed by the issuance of a writ of *habeas corpus* rendered in a criminal cause, by a court of general criminal jurisdiction, as in the case of an attack collaterally made upon a judgment rendered in similar circumstances in a civil action.

Now, nothing is better established than that the writ of *habeas corpus* possesses none of the attributes or performs any of the functions of a writ of error, or an appeal, or *certiorari*. Brown, Jurisdict., sec. 104; Church, Hab. Corp., sec. 196. By it, no mere error occurring at, or prior to, the trial can be reviewed, retried, or relitigated. Mere errors or irregularities which occur antecedent to, or during the progress of, the trial, can not abate the force and effect of the judgment of a court of competent jurisdiction; nor be investigated by *habeas corpus*. Thus, after conviction and judgment, the courts on *habeas corpus* will not inquire into the legality of the grand jury, how it was summoned, etc.; nor can the sufficiency of the evidence on which the prisoner was convicted be investigated, nor the facts thereof retried or the evidence reviewed; nor will the prisoner be permitted to disprove the charge on which he was found guilty, nor can a defective indictment, one which would be held bad on demurrer, be investigated, nor made the subject of further inquiry or review. The writ of *habeas corpus* is not framed to retry issues of fact or review the proceedings of a legal trial, however irregular or erroneo�there Church, Hab. Corp. [2 Ed.], secs. 367a, 348, 35⌣,

297, 196, 246, 87, 236, 363, 73, and cases cited; Brown, Jurisdict., sec. 104.

"If a criminal charge is colorable; or 'sufficient to set the judicial mind in motion,' or to call upon it to act; or make some approach toward charging a criminal offense; or intimates the facts necessary to constitute the offense and a purpose to declare thereon; or tends to show a criminal offense, no matter how informal or defective; or has a legal tendency to prove each requirement of the statute, it will shield the proceedings from collateral attack." Van Fleet, Coll. Attack, sec. 304. In a word, no errors or irregularities, not going to the question of jurisdiction, are reviewable on *habeas corpus. Ibid.*

And as to jurisdiction, every court in this state is bound to take judicial notice of the fact that the criminal court of Jackson county has a general jurisdiction to deal with criminal causes; so that when a judgment of that court is brought in question respecting any given case of that class, it will be presumed that it had jurisdiction of the person tried, as well as jurisdiction of the subject-matter, to wit, over that class of cases, the latter a jurisdiction conferred by law and, therefore, a matter of judicial notice.

Judge COOLEY says: "It is not to be assumed that a court of general jurisdiction has in any case proceeded to adjudge upon matters over which it had no authority; and its jurisdiction is to be presumed, whether there are recitals in its records to show it or not." Const. Lim. [6 Ed.], 500.

Speaking of the difference between courts of general and those of limited jurisdiction, and of the conclusive presumptions attendant on the acts and adjudications of the former, Mr. Justice BALDWIN says: "A court which is competent by its constitution to decide on its own jurisdiction, and to exercise it to a

final judgment, without setting forth in their proceedings the facts and evidence on which it is rendered, whose record is absolute verity, not to be impugned by averment or proof to the contrary, is of the first description; there can be no judicial inspection behind the judgment save by appellate power." *Grignon's Lessee v. Astor*, 2 How. 319, *loc. cit.* 341.

In *Ex parte Watkins*, 3 Pet. 193, Chief Justice MARSHALL, when speaking of the conclusive effect of judgments of courts of general jurisdiction, said: "An imprisonment under a judgment can not be unlawful, unless that judgment be an absolute nullity; and it is not a nullity if the court has general jurisdiction of the subject, although it should be erroneous.   The circuit court of the District of Columbia is a court of record, having general jurisdiction over criminal cases.   An offense cognizable in any court, is cognizable in that court.   If the offense be punishable by law, that court is competent to inflict the punishment.   The judgment of such a tribunal has all the obligation which the judgment of any tribunal can have.   To determine whether the offense charged in the indictment be legally punishable or not, is among the most unquestionable of its powers and duties.   The decision of this question is the exercise of jurisdiction, whether the judgment be for or against the prisoner.   The judgment is equally binding in the one case as in the other; and must remain in full force unless reversed regularly by a superior court capable of reversing it.   *   *   *   The question whether any offense was, or was not, committed, that is, whether the indictment did or did not show that an offense had been committed, was a question which that court was competent to decide.   If its judgment was erroneous,   *   *   *   still it is a judgment, and, until reversed, can not be disregarded."   3 Pet. *loc. cit.* 203 and 206.

On this subject of attacking a judgment collaterally, on *habeas corpus*, it has been ruled in Georgia that:   After a judgment of conviction for felony has been affirmed by the supreme court on writ of error brought by the convict, the legality of his conviction can not be drawn in question by a writ of *habeas corpus* sued out by him, or by another person in his behalf, save for want of jurisdiction appearing on the face of the record as brought from the court below to the supreme court.   Such affirmance implies that he was tried by a court of competent jurisdiction legally constituted, and nothing to the contrary can be shown otherwise than by inspection of the record.   *Daniels v. Towers*, 79 Ga. 785.

It will be noted that the petition for the writ herein makes no pretense that the criminal court did not have jurisdiction in murder cases or over the persons of defendants, but claims that it did not have such jurisdiction because of defects in the indictment; defective summoning of the grand jury; perjured testimony, etc., all of which, as already seen, do not abate, in any respect the jurisdiction of the court over the subject-matter, to wit, its right and authority to try criminal cases, nor its jurisdiction over the persons of petitioners.

But it is unnecessary to extend this discussion further, nor to multiply authorities which declare a very familiar principle.

This record then presents a case where a petition which fails to comply with statutory provisions and requirements the most obvious; which fails to state probable cause; which does not make out a *prima facie* case; which indubitably and by inevitable inference shows that a judgment has been rendered against the petitioners in a court legally constituted and where the indictment plainly charges murder in the first degree;

where the petition expressly states that they are under sentence of death; and yet on this petition thus drawn, and in disregard of an express statutory declaration that "no court shall have power to inquire into the legality or justice of any judgment of any court legally constituted," and in disregard of familiar principles enunciated by all the authorities, the writ of *habeas corpus* has been granted, and the petitioners brought before the court which caused it to issue.

*What* was the object and purpose of its issuance? Was it to go through with the idle ceremony of bringing the petitioners before the respondent and then remanding them, or was it in order to have witnesses summoned; reopen and try anew the issues of fact and of law already adjudged and determined by the solemn adjudication of a court of competent jurisdiction, a judgment afterward affirmed by this court? Or did the writ issue merely to have witnesses summoned, take their testimony and thus show that the wrong result had been reached on the trial had and the adjudication made, and then remand the prisoners?

It matters not what the purpose was or the object in view. In any event the issuance of the writ was in disregard of the plainest statutory provisions and prohibitions, and was the establishment of a precedent most dangerous in its tendencies and innovations, and one not to be contemplated without the gravest apprehensions. Just look at it! If such a proceeding as this is to be tolerated, after a man has been duly tried and convicted of murder, and judgment rendered and that judgment affirmed in this court, and the day of his execution set, any *probate* or *county judge* in the state, may, if the trial has happened in his county, interpose with a *habeas corpus;* retry the case *on the merits;* impeach the judgment of the trial court, and discharge the prisoner, if in *his* opinion this be the cor-

rect thing to do. The fact that in this instance the writ has been issued by the judge of. a circuit court, a court of general jurisdiction, does not alter the complexion of the case in the least, because after all the sole question to be answered is: Does the *power* exist anywhere in this state thus collaterally to impeach the judgments of courts of competent jurisdiction, and thus to thwart the judgments and mandates of this court? We are not of opinion that any such power or jurisdiction exists or has any foundation either in statutory law or in legitimate precedents.

Besides, granting the existence of a general jurisdiction in respondent to issue writs of *habeas corpus,* still that jurisdiction *never attached* in this particular case; was not put in motion by reason of the fact that *such allegations as the statute requires* to be made in the petition as the basis for the issuance of the writ in sections 5346 and 5347, were not made; the rule being that when "the law conferring the power on the court to act in the matter requires the allegation of a particular fact to exist as a condition to its exercising its power, such fact must be averred, for this refers to and circumscribes the power of the court to act except upon the existence of such fact." Brown, Jurisdict., sec. 1. And such general jurisdiction was never set in motion, because, further, it is apparent on the face of the petition, that the parties could neither be discharged nor admitted to bail, nor in any manner relieved. Section 5348.

But it may perhaps be said that section 5402, of the *habeas corpus act,* provides a penalty of not exceeding $1,000, in favor of any party aggrieved, where a court or magistrate refuses the writ. This is a grievous misapprehension of that section, because by the very terms of that section, the penalty can be exacted

only when the writ "may *lawfully* issue," and when it may lawfully issue is determined by prior sections of the same chapter.

Moreover, it is proper to say just here that the penalty provision has its original in the statute of 31 Car. II. Possibly parliament had the power to provide and enforce a penalty in the circumstances mentioned; but as under the express provisions of article 3 of our state constitution which divides the powers of government into three distinct departments, the legislative, executive and judicial, and forbids either of those departments to exercise any power properly belonging to either of the others, "except in the instances in this constitution expressly directed or permitted," the *legislature* of this state has in our opinion *no power* to provide a penalty for a judge or court simply because a writ of *habeas corpus* is denied, which denial is based upon an honest endeavor to discharge what is believed to be the demands of recognized and imperative judicial duty. If the legislature may go further than this, then it can destroy the independence of the judiciary, and punish a judge because he, after due deliberation, denies any other writ, or honestly enters or renders any merely erroneous order or judgment.

On this point it is very forcibly said by Mr. Justice Brewer: "Nothing is more important, in any country, than an independent judiciary; and nowhere is it so important, so absolutely essential, as under a popular government. No man can be a good judge who does not feel perfectly free to follow the dictates of his own judgment wheresoever they may lead him. And in a country where * * * popular clamor is apt to sway the multitude, nothing is more important than that the judges should be kept as independent as possible. And it is universal experience, and the single voice of the law-books, that one thing essential to

their independence is that they should not be exposed to a private action for damages for anything that they may do as judges." *Cooke v. Bangs*, 31 Fed. Rep. 640. See, also, 1 Jaggard, Torts, pp. 120, 121; *Bradley v. Fisher*, 13 Wall. 335.

Having said thus much regarding the proceeding had before the learned respondent in respect to the issuance of the writ of *habeas corpus*, we come now to consider the issuance of our writ of *certiorari* herein to bring the proceedings aforesaid before us.

This writ was issuable at common law *before* the proceedings instituted had culminated in a trial, order, or judgment, and was based on the absence or the excess or usurpation of jurisdiction on the part of the tribunal from which the proceedings were removed. 2 Spelling, Extr. Relief, secs. 1926, 1928, 1921, 1930; 1 Tidd, Pr. [4 Am. Ed.], 398; *Goodright v. Dring*, 2 Dow. & R. 407; *Cross v. Smith*, 2 Ld. Raym. 836; 2 Comyns's Dig. [4 Ed.], tit. "Certiorari;" Harris, Certiorari, sec. 8.

And though the issuance of the writ at the instance of an individual, will not go except in the exercise of a sound judicial discretion (*Inhabitants of Cushing v. Gay*, 23 Me. 9; 4 Encyc. Plead. & Prac. 33, 34, and cases cited), yet where the writ is applied for, as here, by the attorney general, it goes as a matter of course and of right. 4 Encyc. Pl. & Pr. 37.

And it seems that though where an individual applies for the writ, he must show special cause therefor, but that where the writ is granted on the application of the state, the reasons for the allowance need not appear; they will be presumed to exist. *State v. New Jersey, etc., Club*, 19 Atl. Rep. 976.

Here, however, the petition filed on behalf of the state sets forth the usual grounds. The object and purpose of the writ at common law, as shown by the

authorities, was to keep inferior judicatories within the bounds of their jurisdiction. 4 Encyc. Pl. & Pr. 91, and cases cited.

Under the constitution of this state, this court has a general superintending control over all inferior courts, and as a means of maintaining that superintending control, it has power to issue writs of *habeas corpus*, *quo warranto*, *certiorari*, and other original remedial writs, and to hear and determine the same. Art. 6, sec. 3.

The power of this court is as comprehensive in this respect over inferior courts in this state, as was the court of kings bench in England in a similar way. And on many occasions has this superintending control been exercised by this court from the earliest days of its history down to the present time, in keeping circuit, and other courts within the compass of their legitimate jurisdiction, and in preventing them from transcending the confines of their lawful authority. And, as is aptly said in *People v. Judges*, 24 Wend. 253, "The writ here is in nature of a *special quo warranto*, to ascertain by what authority a particular judicial act is done." Such an occasion is the present one. Our inquiries, however, are limited under the common law practice which prevails in this state, to such errors as are of record and jurisdictional in their character. *State ex rel. v. Smith*, 101 Mo. 174, and cases cited. The existence of such jurisdictional errors has been pointed out, and because of them, we were moved to quash the proceedings, in *habeas corpus*, as heretofore stated. Proceedings quashed. All concur.