THE STATE ex rel. ARCHIBALD M. EVANS v. ELBRIDGE J. BROADDUS et al., Judges of Kansas City Court of Appeals.

*In Banc, July 2, 1912.*

1. SUPREME COURT: Superintending Control: Certiorari. The right and duty of the Supreme Court, as the repository of final, superintending and supervisory judicial control over other courts, to bring up their records by *certiorari* and to set aside and quash orders and judgments whether outside or in excess of their jurisdiction, ought not to be questioned, since it is a power plainly lodged in the Constitution, and its exercise is necessary and useful in establishing uniformity in the general law.

2. CERTIORARI: Office. Where an appeal or writ of error does not lie, *certiorari* does not go as of right, but it goes in such cases in order that profert of the challenged record be made,

State ex rel. v. Broaddus.

to be searched for jurisdictional defects; that is, orders, judgments and parts of judgments outside of or in excess of the jurisdiction of the subordinate court making or rendering them. It takes the record as it is, excluding the evidence which relates to the merits only and tending to show that the court erred in its judgment.

3. ———: Jurisdiction: Conflict: Habeas Corpus Interrupted and Thwarted by Mandamus. The Court of Appeals has no jurisdiction to compel by mandamus the sheriff to execute the commitment warrant and place in jail a witness who has been committed by a notary public for contempt for refusal to answer questions, where such witness has previously filed in the circuit court his petition for a writ of *habeas corpus* and that petition remains undecided and is *sub judice* at the time the Court of Appeals issues its said writ of mandamus. Such an attempted interruption with the *habeas corpus* proceeding would be irregular and unwarranted, for that in effect is to try out and dispose of the merits of the *habeas corpus* still pending.

4. ———: When Jurisdiction Commences: On Filing of Petition. An action is begun in a court of record when the petition is filed. When a witness, who has been committed by a notary public for refusing to answer questions, files his petition for *habeas corpus* in the circuit court, having for its purpose a test of the validity of the contempt proceedings and the commitment under which he is held, his suit is commenced.

5. ———: ———: ———: Subverted by Mandamus from Higher Court. And thereafter the Court of Appeals has no jurisdiction, while that petition for *habeas corpus* is undecided, to issue its writ of mandamus compelling the sheriff to execute the notary's warrant of commitment and lodge the witness in jail until he testifies.

6. ———: ———: ———: ———: Delaying Action: No Bail Exacted. Nor does the fact that the circuit court delayed action after issuing its writ of mandamus until the Court of Appeals had taken action on its writ of mandamus, impair the right of the prisoner to have his *habeas corpus* suit tried in a court having jurisdiction of that action (at least to issue the writ); nor does the informality of the circuit court in letting the prisoner go *ad interim* without bail affect the question of jurisdiction.

7. HABEAS CORPUS: Bulwark of Personal Liberty: Duty of Courts: Suspension of All Other Writs. It would be of consequence, deep, wide and pernicious, to abate by one jot or tittle the sanctity or power of the ancient office of the writ of *habeas corpus*. It is seemly for courts of justice to well see to it that the flame of the lamp of personal liberty is kept alive,

well trimmed and brightly burning. The authority of all other writs must yield to the authority of the writ of *habeas corpus*. Indeed (at least, in times of peace) every human power must give way to it, and no prison door is stout enough to stand in its way. Where a writ of *habeas corpus* is issued, the original writ of commitment is suspended.

8. ————: **Deposition: Power to Compel Witness to Reveal Names of Other Witnesses.** A notary public, at the taking of a deposition by a plaintiff in a personal injury case against a street railway company, has no power to compel the claim agent of the company to tell the names of those persons he has learned the company intends to use or might use as witnesses, or who have told him they had witnessed the accident.

## Certiorari.

JUDGMENT OF COURT OF APPEALS QUASHED.

*Brown & Eastin* for relator.

(1) The respondents were without authority to interrupt by mandamus the right of relator to have the cause of his detention inquired into by *habeas corpus*. The writ of *habeas corpus* is a high prerogative writ, known to the common law, the great object of which is the liberation of those who may be imprisoned without sufficient cause. Ex parte Watkins, 28 U. S. 193; People v. Liscomb, 60 N. Y. 559; In re Dill, 32 Kan. 668. The writ of *habeas corpus* is an immediate remedy for every illegal imprisonment. Comm. v. Brower, 9 Kulp. (Pa.) 317; Comm. v. Lecky, 1 Watts, 67; People v. Wells, 68 N. Y. Supp. 58; 2 Story (5 Ed.), Sec. 1339. The writ of *habeas corpus* is a high prerogative writ given by the common law and of authority paramount to all other writs. By the production of the prisoner on a writ of *habeas corpus* the court acquires absolute jurisdiction of the person and the original cause of commitment is suspended until the cause is disposed of. The custody is not on the original warrant, but is under the authority of the writ of *habeas corpus*. Haley's Case, 1 Mod. 195; Taz-

acharly v. Baldo, 1 Salk. 352; Matson v. Swanson, 131 Ill. 255; State v. Sparks, 27 Tex. 705; Rex v. Bethel, 5 Mod. 22; Barth v. Clise, 12 Wall. (U. S.) 401; In re Kaine, 14 How. (U. S.) 103; Bacon's Abridgment, *Habeas Corpus*, B., 13; Hurd on *Habeas Corpus* (2 Ed.) 324; Matson v. Swanson, 131 Ill. 255. In the present case the authority of the sheriff for arresting Evans was the commitment of the notary. The issuance of the writ of *habeas corpus*—whether this be considered to have been done on June 12 or on June 24—supplanted the commitment, and thereafter the sheriff held his prisoner under the direction of the court by virtue of the *habeas corpus* proceeding. The commitment was so effectually nullified while this proceeding was pending that, had the sheriff attempted to hold or confine the prisoner without an order from the court, his act would have been false imprisonment. Ex parte Jilz, 64 Mo. 210; State ex rel. v. Dobson, 135 Mo. 1. (2) The commitment issued by the notary public was void. The notary adjourned the taking of the testimony before issuing the writ. The adjournment closed the authority of the notary under the notice, and all proceedings subsequent to that order were void. In re Green, 86 Mo. App. 216, 126 Mo. App. 317. (3) The evidence called for by the questions propounded to relator was incompetent and immaterial, and as relator is an attorney at law and the representative of the defendant in the proceeding, the information, even if competent, was privileged when objected to by his principal and client. The testimony could not have been received at the trial of the cause. It was foreign to the subject-matter of the suit, and the questions were evidently asked for a purpose not contemplated by the litigation. In re Shull, 221 Mo. 623; Ex parte Livingstone, 12 Mo. App. 80; Ex parte Krieger, 7 Mo. App., 367; Matthews v. Railroad, 142 Mo. 669; Tyson v. Loan Assn., 156 Mo. 588.

*Charles C. Crow* and *John S. Boyer* for respondents.

(1) The Kansas City Court of Appeals has power to issue writs of mandamus. Sec. 12, Art. 6, Constitution. (2) This court has no power to review a decision of the Court of Appeals in a case of which it has jurisdiction, unless the case be certified. The rule has become firmly established in this State. State ex rel v. Smith, 173 Mo. 398, 176 Mo. 90, 188 Mo. 181; State ex rel. v. Broaddus, 207 Mo. 124. The writ of *certiorari* will not issue from any court, under the common law, unless the court to which the writ is issued is assuming to act without jurisdiction, or acting in excess of its jurisdiction; and in no case can judicial errors be reviewed by means of this writ, and even though there be judicial error in this case (which we most emphatically deny), the rule applies. Cases cited, supra. In this case the alternative writ of mandamus, return of sheriff, intervening petition of Evans, and reply of relator is the record proper. There was a commissioner appointed to take testimony, and upon the return of the commissioner so appointed the judgment was entered upon the facts found by the commissioner. The only record in this case that can be read by this court, even if it has jurisdiction, is the alternative writ, return of sheriff, intervening petition and denial by relator, which made an issue of fact, into which this court certainly will not inquire. State ex rel. v. Wells, 210 Mo. 621; State ex rel. v. Smith, 173 Mo. 414. (3) The writ of *habeas corpus* is not so sacred but that it will be denied where the petitioner does not make the proper showing to obtain the writ. This is a writ of right, but not a writ of course. State ex rel. v. Dobson, 135 Mo. 1. (4) In this case the evidence called for was relevant, competent and material, for the reason that in any case parties have the right to show on the trial that de-

fendant or plaintiff is concealing the names of or that they are failing to call persons who know the facts in issue; and a party has the right to prove that plaintiff or defendant has obtained the names of persons who know the facts and such testimony is not hearsay. Devoy v. Transit Co., 192 Mo. 220; Greenleaf on Evidence (15 Ed.), Secs. 100-101; Miller v. Crigler, 83 Mo. App. 400; Courtney v. Blackwell, 150 Mo. 245, Syl. 8; 6 Ency. of Ev. 443. (5) It is the duty of the notary to require an answer to questions where privilege is not claimed; the question of the materiality or competency is for the notary, and not the witness or his instructor. Ex parte McGee, 18 Mo. 599; Ex parte Gfeller, 178 Mo. 248, Syl. 9; Ex parte Mumford, 57 Mo. 606; Dustin v. Ferrelly, 81 Mo. App. 385. The notary acted in a judicial capacity in requiring Evans to answer questions, and it was the duty of the witness to obey the officer instead of persons interested in concealing the truth. Swink v. Anthony, 96 Mo. App. 424; Gharst v. Transit Co., 115 Mo. App. 408; Larrymore v. Bobb, 114 Mo. 453.

LAMM, J.—Original proceeding. *Certiorari* to quash a record. Respondents, our brethren of the Kansas City Court of Appeals, file return setting forth all the pleas, proceedings, briefs and entries in a certain mandamus suit, and this cause is submitted on respondents' motion to quash the writ. Marshaling the facts, they follow, viz.:

In April, 1911, one Bressman, adjudged of unsound mind, brought suit in the Buchanan Circuit Court through Gibson, his guardian, against the St. Joseph Railway, Light, Heat and Power Company, for damages for alleged injuries received while a passenger on one of said railway company's cars. Presently Bressman gave notice, and on June 10, 1911, proceeded, to take the deposition of one Evans (relator in the instant case) before Miss Apple, a notary

public. Therein Mr. Brown represented defendant and Mr. Crow, plaintiff. Evans had been claim agent for defendant for several months and had done work in investigating the Bressman suit. He testified that the alleged time of the accident was several years ago; that he had looked for a report of it and had failed to find any; that he did not know the names of the con- ductor and motorman, had been given no names by the railway company and knew of no effort to find the names of the motorman and conductor; that if a re- port had been made the company's claim department. would be the people most likely to know their names; and that he had made no inquiry in that regard from street car men.

From this point on the record may as well tell its own story, viz.:

"Q. Have you learned and do you know the name of any person who was on the car as passen- ger at that time? A. No, sir. Q. Is there any paper on file in your office showing names of any persons on the car at that time? A. Not that I know of. Q. Have you looked recently? A. I looked for the report. Q. Did you look for any other paper that would give names of persons on the car? A. No, sir. Q. Have you looked recently? A. No, sir. Q. Who did you find knew about this accident, from your investiga- tion? . . . Q. I will ask if you found any person who was on the car or saw this Mr. Bressman injured? . . . A. No, sir; I do not. Q. Have you talked with anybody or learned the name of any person who was on the car? . . . Q. What do you know? A. Only what I heard. Q. From what—from the result of your investigation and from what you have learned by your investigation, do you know the name of any person that claims to have been on the car at the time of the injury or saw Mr. Bressman injured?

"Mr. Brown: You needn't tell what anybody claims to know, if you got it by making investigation; that is, if someone told you, you can decline to answer on the ground that all you know is what was told you, and decline to answer.

"Q. Do you decline to answer question? A. Yes, sir. Q. Why do you decline? A. Because it is only hearsay. Q. Is that your only reason for answering? A. Yes, sir.

"Mr. Crow: We will ask that he be compelled to answer questions.

"Mr. Brown: He will decline to answer hearsay, what someone has told him; he will decline to answer.

"Q. You refuse to answer the question as to the names of the persons you have discovered who say they were on the car or saw the injury to Mr. Brassman do you? A. Decline to give the names, do you mean? Q. Yes, sir; of the people who you learned from your investigation claimed they were on the car or saw the accident? A. Because I wasn't there and don't know whether they were there or not.

"Mr. Crow: We ask the notary to instruct him to answer the question.

"Notary: Will you answer the question? A. No.

"Mr. Brown: Bear witness that Mr. Crow is instigator in having attachment issued.

"Further taking of testimony continued until such time as questions can be answered.

"Mr. Brown: I am perfectly willing for Mr. Evans to answer any question and give any fact he knows of his own personal knowledge, but refuse to have Mr. Evans answer any question which he may have heard and to give here as (hearsay) testimony."

Thereupon at that stage the notary found Evans guilty of contempt in refusing to answer the above questions and made an order and issued a warrant of commitment, each setting forth the facts and directing the sheriff of Buchanan county to confine Evans in

the Buchanan common jail until released by the notary
"or by due process of law." It seems when later in
the same day that warrant came into the hands of the
sheriff, Evans was not within immediate reach, but
that he returned and surrendered to the sheriff on
June 12, 1911, and was put under arrest. Presently
on that same day he filed in the Buchanan Circuit
Court his petition for a writ of *habeas corpus.* As
near as we can make out the sheriff produced his pris-
oner on that day before Judge Amick. Thereat coun-
sel for Bressman (or the notary) on one side and for
Evans on the other appearing, the former objected to
issuing the writ, and, the cause being docketed, a dis-
cussion sprung *ore tenus* whether the writ should go.
After hearing counsel on that question, the court made
the following entry under date of June 12:

"Now here at this day comes A. M. Evans, peti-
tioner herein, by his attorney, and files petition for
writ of *habeas corpus* and comes also Edna Apple, no-
tary public, respondent herein, by her attorney, and
comes also the sheriff and produces the prisoner in
open court and said application is at this time taken
up and presented to the court, and after some progress
the further hearing of this cause is continued until
9:30 o'clock tomorrow morning, and the court in-
structs the sheriff orally in open court not to confine
the prisoner in jail."

We do not find any entry on the next day. How-
ever, the matter remained as it were *in fieri,* and on
June 24, Judge Amick resumed consideration and is-
sued a writ of *habeas corpus,* over the protest of Bress-
man's counsel. On June 26, the sheriff made his re-
turn and Judge Amick heard the cause and took it
under advisement where it has been held *sub judice*
to this day, unless disposed of by what we are about
to relate.

Going back a little, on June 22, 1911, Bressman
applied (without notice so far as shown) to the Kan-

sas City Court of Appeals for a writ of mandamus to compel Theisen, sheriff, to execute the notary's warrant of commitment and put Evans in jail until he testified. An alternative writ issued on the same day citing the sheriff to show cause. It was made returnable June 28, 1911, and was served on a date dark. On the return day Evans filed an intervening petition narrating the facts hereinbefore stated anent the pendency of a *habeas corpus* proceeding in the Buchanan Circuit Court to test the legality of the notarial proceeding and commitment for contempt, with dates, entries and orders made in that court in that behalf as hereinbefore set down. He went further and suggested that he was an attorney at law and that the evidence elicited at the notarial hearing was not only hearsay, but was procured by him in his capacity as claims attorney for defendant in the damage suit and pleaded other facts not material here.

Theisen, sheriff, filed his return setting up the facts of the pendency of a *habeas corpus* proceeding and the same entries, dates and orders referred to in Evans's intervening petition. On the return day such proceedings and hearing were had as resulted in the appointment of William D. Rusk, Esq., special commissioner, to take testimony and report findings of fact. Subsequently on September 30, Mr. Rusk made his report finding the questions and answers before the notary as we have set them down, the arrest of Evans, the application for a writ of *habeas corpus* on June 12, etc., as heretofore stated. He also found that Evans had not been put in jail under the commitment, but had been at large ever since the order of the circuit court on June 12, 1911. Presently the Kansas City Court of Appeals proceeded to judgment and handed down an opinion in that behalf, wherein it held that the questions were proper and were due to be answered, that there was a proper finding of contempt, a proper commitment and that the sheriff should obey

the warrant notwithstanding the pendency of the *habeas corpus* proceeding in the Buchanan Circuit Court. The record shows the *habeas corpus* record and proceeding were not. brought up by a *certiorari* to the Kansas City Court of Appeals before the judgment there. So, the petition for *habeas corpus* was not before that court, therefore is not certified here. But, otherwise, that court had before it all the facts relating to the *habeas corpus* as they happened, *nisi,* in their true chronological order. On those facts that court held it had acquired prior jurisdiction by virtue of its alternative writ of mandamus, and on that phase of the case, among other pronouncements, delivered the following:

"It must be admitted that had the circuit court discharged the witness on the hearing of the writ of *habeas corpus* that would have been the end of the matter, and the writ issued in this case would have been unavailing, notwithstanding the action of the court would have been erroneous. But that court has not seen fit to act upon the writ, but deferred action, we presume, because this court had prior jurisdiction in the matter. Where one court has competent jurisdiction of the person and is proceeding to exercise it, it would be a great outrage upon the administration of justice if a court of equal or inferior jurisdiction should by virtue of the writ of *habeas corpus* seek to override the jurisdiction of the former by discharging the person, and thus annulling its writs and processes and rendering abortive any judgment it might lawfully render. Should we hold that the action of the circuit court in issuing the writ of *habeas corpus* was a bar to any other or further proceeding in this case it would in effect be to hold that the jurisdiction of this court was at an end, and that an inferior court by such means could oust this court of a jurisdiction conferred by the Constitution. To prevent such an anomalous condition, this court has the power to issue a *certiorari*

and have a writ of *habeas corpus* brought to this court, and by such means bring the whole question up for its judgment. [State ex rel. Walker v. Dobson, 135 Mo. 1.] But, as the Buchanan Circuit Court seems to be impressed with the anomaly of the situation and has wisely refrained from final action on the writ until this court passes upon the question, we see no necessity for doing so.''

The upshot was an absolute writ of mandamus was ordered directing the sheriff to execute the notarial commitment, Bressman to give a new notice to take depositions and the sheriff to produce Evans before the notary at that time to answer the questions.

Presently, failing to get a rehearing, Evans applied here for (and got) a writ of *certiorari* to bring up the record, and respondents made return, sufficient of which already appears, and followed that with a motion to quash the writ, as said. The petition for *certiorari* need not be reproduced. It was sufficient to raise all points presented to be ruled. The motion to quash our writ is grounded on six specifications. First, that the writ was improvidently issued. Second, that this court had no jurisdiction to grant the relief prayed. The third, fourth, fifth and sixth are but amplifications of the second, to the effect that the Kansas City Court of Appeals has plenary jurisdiction; that its jurisdiction is not subject to review in this court; that the decision in that court was unanimous and therefore final, absent a compliance (as here) with the method pointed out in Sec. 6, of the 1884 Amendment of the Constitution (R. S. 1909, p. 101), providing for a certificate from a member of that court that the decision was contrary to certain prior decisions of this court or of some other court of appeals.

We will formulate vital propositions in our own way, and other pertinent facts will appear in the opinion.

I. Of the jurisdiction of the Supreme Court (and herein of the office of the writ of *certiorari*).

(a) At this late day the right and duty of this court, as the repository of final, superintending and supervising judicial power over other courts, to bring up their records by *certiorari* and set aside and quash orders and judgments either outside or in excess of their jurisdiction, ought not in reason to be questioned. It is a power well and plainly lodged in the Constitution. [Sec. 8, Amendment of 1884, R. S. 1909, p. 102; Sec. 3, Art. 6, Constitution.] It is a necessary and useful power, to the end that there may be uniformity in the general law—i. e., one rule of law in all courts of the State and that all should harmoniously move in a prescribed and known orbit as near as may be. [State ex rel. Curtis v. Broaddus, 238 Mo. 189.] When the law is uncertain, or when similar cases are ruled by diverse reasons, obedience as has been well said, is miserable.

That the power should be guardedly used with modest gentleness and always with circumspection argues nothing against its proper use. That its use is delicate and liable to abuse argues nothing against its use when its use is called for. What says the precept? To argue against the use of a thing because of the danger of the abuse of the thing is specious but fallacious reasoning.

In so far as the motion to quash the writ is based on our want of jurisdiction it is not well taken.

(b) Where an appeal or writ of error does not lie, as here, *certiorari* does not go as of right, but it goes in such cases in order that profert of the challenged record be made to be searched for jurisdictional defects—that is, orders, judgments and parts of judgments without (or in excess of) the jurisdiction of the subordinate court making or rendering them. [State ex rel. Scott v. Smith, 176 Mo. 90; State

ex rel. Manning v. Smith, 188 Mo. 167; State ex rel. v. Reynolds, 190 Mo. 578.]

*Certiorari* does not take the place of mandamus to compel the making of a record, but it takes the record as it finds it, excluding the mere evidence which can, in the nature of things, relate to the merits only, tending to show, as it does, that the court erred in its judgment. The office of the writ is not to review error of that sort. In this connection it is argued that we may not look into the evidence put in in the mandamus suit. We agree that such is the law of *certiorari.* [State ex rel. v. Smith, 173 Mo. 414; State ex rel. v. Wells, 210 Mo. 621.] But that contention avails naught · here; for the facts as set forth appear on the face of the record itself. Hence, we disallow the point to respondents.

II.  Of the *habeas corpus* proceeding (and herein of jurisdiction of the Court of Appeals to give judgment therein and of conflicts of jurisdiction).

(a) · The judgment of the Court of Appeals runs on the theory that it got jurisdiction of the subject-matter before the jurisdiction of the circuit court attached and that under such circumstances to permit a subordinate court to interpose and override such jurisdiction by discharging the person whose imprisonment the writ of mandamus was aimed at, could not be tolerated. But, with great respect to our learned brethren of that court, we cannot agree to the premise upon which that conclusion is based. This, because: When on June 12, 1911, Evans filed in the circuit court of Buchanan county his petition to be discharged, we are of opinion his suit was commenced having for its purpose a test of the validity of the contempt proceedings and the commitment under which he was held.

It is argued that the *habeas corpus* proceeding was not begun and the jurisdiction of the circuit court did not attach until the writ itself was issued, but the

point is left unreasoned in respondent's brief and we are cited to no authority sustaining that view of it. Look at it. The petitioner submitted himself to the jurisdiction of the circuit court by filing his petition. When the sheriff produced his prisoner in court on June 12 without a formal writ, we do not say the writ was waived or could be waived (we reserve that question), but we do say there was lacking nothing but the formal issue of it to complete jurisdiction upon which judgment could go on a hearing. But as it stood at that time, with Bressman's attorney opposing the issuing of the writ and the prisoner's attorney demanding one on his petition filed, it cannot be said the circuit court was so entirely without any stage of jurisdiction as to raise a question of comity between an upper and lower court and breed scandal in the administration of justice by going on on June 24 and 26.

Construing Sec. 1756, R. S. 1909, relating to the commencement of actions and institution of suits, it has been held that an action is begun in a court of record when the petition is filed. This, even although summons may not thereafter be issued until the action is barred. [State ex rel. v. Wilson, 216 Mo. 292.] To the same effect are Gosline v. Thompson, 61 Mo. 471; South Missouri Lumber Company v. Wright, 114 Mo. 326; McGrath v. Railroad, 128 Mo. l. c. 9; Ex parte Munford, 57 Mo. 603.

Mark the reasoning of those cases. It is that by filing his petition the party has done all he can do by himself. The issuing of his writ is not in his hands, but in the hands of the clerk and the filing of the petition is tantamount to an order from the party for such writ. By parity of reasoning, the same sensible and liberal doctrine should obtain under the *habeas corpus* act, when (if the petition be good) the writ must go *instanter*. [R. S. 1909, Sec. 2444.] When the circuit court, then, after taking time to consider, rounded out its jurisdiction theretofore acquired by formally issu-

ing its writs on June 26, its act cannot be interpreted to be an unseemly attempt to take jurisdiction away from the Court of Appeals in this mandamus suit.

There is another view taking color and substance from facts not heretofore stated, viz.:

After opposing the issuing of any writ by the circuit court on Evans's petition then on file, counsel for Bressman (ignoring the jurisdiction of the circuit court) applied to the Court of Appeals for a writ of mandamus to compel the sheriff to go on and do precisely what the *habeas corpus* proceeding was intended to forbid; namely, the incarceration of the prisoner. So much is already set down. Now, did they disclose to the Court of Appeals in their petition the pendency of a *habeas corpus* proceeding in the Buchanan Circuit Court and state that the prisoner had applied for a writ in that behalf; that they had appeared in open court and opposed the issuing of the writ and that the question of issuing one was then in the bosom of the law—*in gremio legis?* They did not. *Contra,* they put the case to the Court of Appeals in their petition for mandamus on the sole theory that the notary had issued her commitment on a judgment for contempt; that it came into the sheriff's hands in due time and that the officer was without excuse in refusing to obey the commitment—all this after opposing the issuing of the writ of *habeas corpus* and without complaining to the circuit court of the delay. Evidently their theory was the mistaken one, that the circuit court could not interfere by a writ of *habeas corpus* on a commitment for contempt, therefore, the Court of Appeals need not be informed of what that court had done or was proceeding to do. Is not some stress due to the foregoing facts in determining the question whether the circuit court was interfering with the jurisdiction of the Court of Appeals, or whether the boot is on the other foot? We think so. If they had disclosed those facts to the Court of Appeals would that

court have issued its writ in the first instance? That the circuit court delayed action after issuing its writ until the Court of Appeals spoke on its own, may be referred to seemly deference and judicial etiquette—but what became of the right of the prisoner to have his *habeas corpus* suit tried in a court having jurisdiction of that action—a jurisdiction (at least to issue the writ) acquired ten days before the Court of Appeals moved in the premises? It may not be lost sight of in the battle of writs. Nor does the informality that the circuit court *ad interim* let the prisoner go without bail weigh by so much as a feather in the scales on the merits. That was an informality, or detail, subject to correction by the judge and of no significance on the grave propositions here.

(b) We come, then, to the related proposition whether the Court of Appeals acquired jurisdiction over the *habeas corpus* proceeding by assuming jurisdiction in the mandamus suit against the sheriff.

We answer that question, no. Taking some samples of many (under the maxim, *ex uno disces omnes*), the writ of *habeas corpus* has been fondly termed by eminent persons who used no words lightly, "The dearest birthright of Britons," "The great bulwark of personal liberty," "The greatest writ of the common law," "The great writ of right." It would be of consequence both deep, wide and pernicious to abate by one jot or tittle the sanctity or power of the ancient office of that writ; for a mere reference thereto brings a proud smile to every student of the history of jurisprudence; and it is seemly for those who attend as priests at the altar of justice to well see to it that the flame of the lamp of personal liberty is kept alive, well trimmed and brightly burning. Says Justice MILLER in Ex parte Lange, 85 U. S. 163: "There is no more sacred duty of a court than, in a case properly before it, to maintain unimpaired those securities for the personal rights of the individual which have received for

ages the sanction of the jurist and the statesman; and in such cases no narrow or illiberal construction should be given to the words of the fundamental law in which they are embodied."

Agreeably to the trend of what has been said, our Constitution provides: "That the privilege of the writ of *habeas corpus* shall never be suspended." [Sec. 26, Art. 2.] What the Legislature may not do under that interdiction, no court should be bold enough to either dare to do or try to do. "The authority of all other writs must yield to the authority of the writ of *habeas corpus*." [Church, Hab. Cor. (2 Ed.), p. 139.] Indeed (at least, in times of peace) every human power must give way to it and no prison door is stout enough to stand in its way. [Ex parte Creasy, 243 Mo. 679; Ex parte Jilz, 64 Mo. l. c. 218.] The studied eulogies paid this writ would be "as sounding brass or a tinkling cymbal" if their significance is to be brushed aside when brought to the test in a concrete case, as if by the tart adage, Fine words butter no parsnips.    Therefore, the principles underlying and furthered by this writ are living everyday principles demanding application wherever pertinent.

The premises considered, it results that when the writ of *habeas corpus* issues, the officer holds his prisoner under that writ and under no other. The original cause of commitment is suspended. "Therefore, from the moment the sheriff receives such writ, the custody of the prisoner will be by virtue thereof, and not under any other writ he may have previously received." [Matson v. Swanson, 131 Ill. 255.] Agreeable to that doctrine is the reasoning of other cases and authorities cited by relator, *ex gr.*: In re Kaine, 55 U. S. 103; Barth v. Clise, 79 U. S. 401; 2 Story's Const. (5 Ed.), Sec. 1339; State v. Sparks, 27 Tex. 705.

It results, further, that the circuit court of Buchanan county, and not the Kansas City Court of Appeals, had judisdiction to try out the validity of the

notarial contempt, proceedings against Evans. This by virtue of the *habeas corpus* proceeding brought by him in that court. And this is so although under the superintending control of the Kansas City Court of Appeals in order to prevent an unregulated and possible scandalous exercise of jurisdiction by *habeas corpus,* it, on a proper showing, could have issued its writ of *certiorari* and brought up the record to be dealt with according to law. That course is not without a notable precedent. [State ex rel. Walker, Attorney-General, v. Dobson, 135 Mo. 1.] Here it did not exercise that constitutional power, but assumed jurisdiction to try out and dispose of the merits of the *habeas corpus,* pending *nisi,* under guise of a junior mandamus suit pending before it. We are unable to look on such exercise of jurisdiction over the *habeas corpus* proceeding otherwise than as irregular and unwarranted. By that course the prisoner never had the question of his liberty decided as he was entitled to have it decided under the writ of *habeas corpus* and in a court of competent jurisdiction where his application for his writ was pending at the outset and was left pending all the way through. By that course he was denied his day in court by a side stroke or by indirection. The matter was disposed of as a mere by (or collateral) incident in another suit. The applicable maxim is: The court has nothing to do with what is not before it. *Nihil habet forum ex scena.* Our attention is called to Ex parte Alexander, 163 Mo. App. 615. But that case does not run with this, hence the doctrine of *quatuor pedibus currit* does not apply.

III. A question is raised, viz.: Was it in the power of the notary to compel Evans to tell the names of those persons he had learned the railway company intended to use or might use as witnesses, or who had told him they witnessed the accident? We are of the opinion it was not. Such testimony, if elicited, in no

conceivable event or emergency could have been read as evidence. The questions were of a class aptly called *fishing*. *Vide, arguendo,* In re Shull, 221 Mo. 623; Matthews v. Railroad, 142 Mo. l. c. 668, *et seq.;* Tyson v. Loan Assn., 156 Mo. 588. Depositions taken, as were these, are taken to be used conditionally in the suit— that is, *de bene esse.* In Ex parte Brockman, 233 Mo. l. c. 161, it was ruled as follows: "The provisions of the statute relating to the taking of depositions *de bene esse,* are in the nature of the old chancery practice relating to a bill of discovery, entitling the party to sift the conscience of his adversary. [Eck v. Hatcher, 58 Mo. l. c. 239; Larimore v. Bobb, 115 Mo. l. c. 453.]"

We have not before us at this time the question whether one eyewitness may not be asked who the other eyewitnesses of an accident were. That information might be useful in chief to identify and earmark the transaction, or in rebuttal. Nor have we the question of the production of books and papers. That form of discovery is allowed and regulated by statute. [Art. 12, Ch. 21, R. S. 1909.] But we have the question whether one litigant may compel the employee of the other to disclose the names of those persons his master may, might, or purposes to use as witnesses. We are of opinion he is not entitled to such discovery, absent a statute requiring it. [Devoy v. Transit Co., 192 Mo. l. c. 219, *et seq.*) Such was the rule relating to discovery in chancery from which the *rationale* of this character of deposition is borrowed. The philosophy of the thing is nowhere more instructively and learnedly expounded than by the eminent author, Mr. Wigmore—a writer whose erudition, industry, chaste vigor of style and reasoning, ornament American jurisprudence. [3 Wig. on Ev., p. 2426, *post* and *ante, q. v.*] The sum of the matter may be found in Sec. 1856, p. 2426, thus:

"In chancery practice, a party to a suit at law has always been entitled, by a *bill of discovery,* to ascertain before trial the tenor of his opponent's knowledge and belief upon all the facts in issue—in other words, to obtain disclosure of his testimony before trial. The soundness of this policy rests upon reasons already examined (*ante,* Sec. 1847, par. 2). But the tenor of this discovery was strictly limited to the *opponent's own testimony,* that is, his own admissions resting on his knowledge and belief. It is true that the bill required from the opponent an answer under oath stating all that he claimed in opposition; but to this extent what was obtained was no more than a sworn pleading, stating such material facts as would be alleged in any pleading. But of the evidence which he was to bring forth in support of those facts—the names of his witnesses and the circumstances to which they would testify—he was required to betray nothing in advance, except so far as he himself could bear testimony. In answering as a witness to facts, it was no excuse for him that his testimony would incidentally reveal his witnesses' names; but this did not impugn the general principle that he was entitled to keep to himself all evidential data except his own testimony."

A late case on all-fours is, Ex parte Schoepf, 74 Oh. St. 1.

Some use is made of a single expression in Devoy v. Transit Company, 192 Mo. l. c. 220, viz.: "The deposition of respondent could have been taken timely and he could have been compelled to uncover his witnesses." But that sentence taken with the thread and trend of the discourse, and keeping in mind the matter under discussion (and the rules for interpreting decisions—State ex rel. Bixby v. St. Louis, 241 Mo. 231), cannot promulgate and evidently was not intended to promulgate the doctrine that in a suit between A. and B., the deposition of C. (C. being at best a mere witness and not a party, or, as appears here, not even

a witness in the case) can be taken to discover the names of persons he had heard say they were present at the accident.

The views expressed lead to only one conclusion. That is, that the motion to quash the writ should be denied and that the judgment of the Kansas City Court of Appeals should itself be quashed.

It is so ordered. Let the relator pay the costs. Judges should not be mulcted in costs or other forms of damages because of judgments rendered by them. All concur.