STATE ex rel. JOHN H. SANKS, Relator, v. C. L. JOHNSON et al., Respondents.

Springfield Court of Appeals, October 11, 1909.

1. COUNTY COURTS: Right to Hire Out Prisoners. One Robert Pipkin was convicted of a felony and committed to jail to serve a sentence of three months. The county court of Texas county entered into an agreement and contract of record with one Edward Starns, to the effect that Starns would pay the county court a designated sum for the services of said Pipkin for three months and the county court ordered said Pipkin to be turned over to the custody of said Starns for said period. *Held*, that section 1791, Revised Statutes 1899, applies only to persons convicted of a misdemeanor, and that the county court in undertaking under that section to provide for the employment of a person convicted of a felony acted in excess of its jurisdiction; and held further, that under none of the sections of the statutes has the county court any authority by contract to deprive a sheriff and jailor of the custody of a convict.

2. CERTIORARI: Proper Remedy. The principle that certiorari is the proper remedy to restrain inferior courts or public officers when they act in excess of their jurisdiction seems to be settled in this State beyond further controversy. Nor is the writ of certiorari a remedy of such limited powers that it is restricted to cases only where no appeal would lie or writ of error could issue. On the contrary, if the writ of certiorari in point of promptness and completeness would afford an adequate remedy for an excess of jurisdiction or the exercise by an inferior court or public officer of unauthorized powers its employment is fully justified.

3. **COURT OF APPEALS: Superintending Control Over Inferior Courts.** This Court of Appeals has original jurisdiction to issue the writ of certiorari and other remedial writs and to hear and determine the same and has superintending control over all inferior courts of record in the counties of its district.

4. **COURT OF APPEALS: Jurisdiction.** The Court of Appeals has jurisdiction and control over a county court in its undertaking to hire out a prisoner who has been convicted of a felony; for such proceeding in the county court is in no way a trial of him for a felony.

5. **INFERIOR COURTS: Discretionary Power Not Under Control of Superior Tribunals.** Where an inferior tribunal or officer has jurisdiction to act and is invested with discretionary powers, such action, however improperly exercised, cannot be controlled by certiorari, by a superior tribunal.

6. **FELONY: Jail Sentence Does Not Reduce to Misdemeanor.** Section 2393, Revised Statutes 1899, has been repeatedly construed by the courts of this state and it has been uniformly held that an offense that may be punished by imprisonment in the penitentiary, although a fine or jail sentence may be inflicted, or is in fact inflicted, will not reduce the crime to the grade of a misdemeanor.

7. **LAWS: Construction.** Courts will not construe laws so as to make their operation absurd or unreasonable. The effect and consequences of any proposed construction of a law may be considered in ascertaining the probable intention of the Legislature.

## Certiorari to the Texas County Court.

ORDER OF COUNTY COURT HIRING OUT PRISONER SET ASIDE.

*Dooley, Hiett & Millard* and *Samuel J. Salyer* for relator.

(1) The county court, under section 1791, Revised Statutes 1899, has a right to provide for the employment of all prisoners who are convicted for a misdemeanor and are sentenced to imprisonment in the county jail or committed to jail for the non-payment of a fine, but it exceeded its authorized powers when it made the order hiring Pipkin to Starns and discharging

him from the custody of the sheriff and jailer of Texas county. Secs. 1792, 1793, 2384, 1791, 2686, 2685, R. S. 1899; State ex rel. v. Simmons, 112 Mo. App. 537. (2) Certiorari is the appropriate remedy. State ex rel. v. Smith, 176 Mo. 99; State ex rel. v. Dowling, 50 Mo. 136; 4 Encyc. Plead. and Prac., p. 91; State ex rel. v. Switzler, 143 Mo. 310; State ex rel. v. Guinotte, 156 Mo. 527. (3) Certiorari is the proper remedy, although writ of error or appeal may be had when writ of error or appeal, in point of promptness or completeness, would not afford an adequate remedy for the excess of jurisdiction or the exercise of unauthorized powers. 4 Encyc. of Plead. and Prac., pp. 36, 55; State ex rel. v. Guinotte, 156 Mo. 526; State ex rel. v. Dowling, 50 Mo. 136. (4) Under the common law the writ of certiorari was granted as a matter of course and right on the application of the Attorney-General of England. 4 Encyc. of Plead. and Prac., pp. 33, 37. Prosecuting attorneys of our State exercise the powers of and take the place of the Attorney-General of England. State v. Ransberger, 42 Mo. App. 471; State v. Kelm, 79 Mo. 516; State v. Kyle, 166 Mo. 303. Hence, when application for the writ of certiorari is made by the Attorney-General or prosecuting attorney of this State, it goes as a matter of course and of right. State ex rel. v. Dobson, 135 Mo. l. c. 19. (5) This Court of Appeals has original jurisdiction to issue writs of habeas corpus, quo warranto, mandamus, certiorari, and all other remedial writs and to hear and determine the same, and to have a superintending control over all inferior courts of record in the counties of its district. State Constitution, section 12, article 6; Amendment to State Constitution, 1884, section 4; section 1598, R. S. 1899; State ex rel. v. Allen, 45 Mo. App. 551; School District v. Burris, 84 Mo. App. 654. (6) The fact that Pipkin was sentenced to three months' imprisonment in the county jail instead of being sent to the penitentiary, does not reduce his offense from a felony to a misdemeanor. Section

2393, R. S. 1899; State v. Clayton, 100 Mo. 516; State ex rel. v. Foster, 187 Mo. 603, 609; State v. Bond, 191 Mo. 566.

*Lamar & Lamar* for respondents.

(1)  The Court of Appeals is without jurisdiction to take any action whatever in the premises, for the Supreme Court has exclusive appellate jurisdiction in felony cases and all collateral matters arising therefrom.  The Court of Appeals cannot under or by original writs, broaden or enlarge their jurisdiction.  State ex rel. v. Ganzhorn, 52 Mo. App. 224; Railway v. McGregor, 53 Mo. App.  368; State ex rel. v. Southard, 61 Mo. App. 296; State ex rel. v. Rombauer, 101 Mo. 506; State ex rel. v. Harter, 188 Mo. 527; State ex rel. v. Nortoni, 201 Mo. 23-30, inclusive; Rule 30, St. Louis Court of Appeals.  (2)  The circuit court possesses ample authority and unquestioned jurisdiction in this particular matter, and application should be made to it. Not only the issuing of a writ of certiorari is a matter in the discretion of the court, but it is an extraordinary writ issued only when an appeal or writ of error cannot be heard, and it is the settled rule in Missouri that it will be denied by an appellate court when it appears that the circuit court has the power to issue the writ, unless the question is one of extraordinary importance and of great magnitude.  State ex rel. v. Walbridge, 116 Mo. 656; Owens v. Andrew County, 49 Mo. 372; State ex rel. v. Jones, 142 Mo. 354; State ex rel. v. Wilson, 90 Mo. App. 154; State ex rel. v. Green, 1 Mo. App. 226.  (3)  Certiorari is an extraordinary remedy and will not be granted where an appeal or writ of error will lie to review the decision of the action complained of. 6 Cyc., pp. 738,  742; 4 Ency. Pl., pp. 50, 72; State ex rel. v. Ayers, 116 Mo. App. 90; State ex rel. v. Edwards, 104 Mo. 125; State ex rel. v. Reynolds, 190 Mo. 589; State ex rel. v. Shelton, 154 Mo. 670; Moore v. Bailey, 8 Mo. App. 159.  (4)  If the action of the county court

herein is a judicial act, then an appeal lies direct to the circuit court. R. S. 1899, sec. 1788; Fisher v. Anderson, 101 Mo. 459; State ex rel. v. Marshall, 82 Mo. 484. (5) If the action of the county court here was ministerial and not judicial, then certiorari will not lie because this writ will only issue to review judicial acts. 6 Cyc., p. 753b; State ex rel. v. Harrison, 141 Mo. 12; Saline County v. Thompson, 45 Mo. 52; Phelps County v. Bishop, 46 Mo. 68; State ex rel. v. Reynolds, 190 Mo. 578 and 588. (6) Certiorari brings up only the record of the tribunal to which it is addressed and facts appearing upon the face of the record proper are all that are before the Court for consideration. State ex rel. v. Cauthorn, 40 Mo. 94; State ex rel. v. Railroad, 190 Mo. 588; State ex rel. v. Casey, 210 Mo. 246; Ward v. Gentry County, 135 Mo. 309. (7) To construe section 1791 and the other provision of the statute as not authorizing the county courts to take the prisoners from the custody of the sheriff or jailer will absolutely nullify the provisions of the statute for working prisoners under the order of the county court, for the reason that no provision is made to compensate the sheriff, his deputy or the jailer for guarding prisoners while at work nor has the county court any power or control to require the sheriff, his deputy or the jailer to go upon the roads or streets and guard prisoners.

NIXON, P. J.—This is an action by the State of Missouri, at the relation of John H. Sanks, prosecuting attorney of Texas county, against the Texas County Court.

The record in this case shows that at the May, 1908, term of the Texas County Circuit Court, one Robert Pipkin was tried and convicted on the charge of having had sexual intercourse with one Ellen Bailey, an unmarried female of previous chaste character between the ages of fourteen and eighteen years, and his punishment was by the jury assessed at three months'

imprisonment in the county jail of said county and that he pay the costs of said prosecution amounting to $306.30; that on appeal to the Supreme Court of the State of Missouri, the judgment against him was affirmed. Subsequently, a capias execution was duly issued from the Texas Circuit Court to the sheriff of that county, directing him to apprehend and confine the said Robert Pipkin in the Texas county jail for a term of three months and to collect the amount of costs taxed in said case. Said Pipkin was apprehended and committed to the common jail of Texas county to serve out his sentence.

On the 2d day of August, the county court of Texas county entered into a contract and agreement of record with one Edward Starns, a brother-in-law of the said Pipkin, conditioned that if the said Starns would pay the county court the sum of $308—the amount of the costs in said case—the county court would make an order releasing the said Robert Pipkin from the custody of the sheriff of said county and deliver him to the said Edward Starns. The order of the county court is as follows:

"*In the Matter of Robert Pipkin.*

"Whereas, Robert Pipkin has heretofore been convicted of a misdemeanor and his punishment assessed at three months in the county jail, and whereas, Edward Starns has offered to the court to employ said Robert Pipkin and has offered to the court the sum of $308.00 for the work and services of the said Robert Pipkin for the term of three months.

"It is hereby ordered by the court that the services of the said Robert Pipkin be let to the said Edward Starns for the term of three months and that the said Robert  Pipkin is hereby ordered turned over to the custody of the said Edward Starns to remain in his custody, at the call of this court, for the term of three months from this date.

"Now comes the said Edward Starns and files his bond in the sum of three hundred and eight ($308.00) dollars, as is above provided, which is by the court approved, which bond is as follows:

"BOND.

"Whereas, Robert Pipkin has been convicted of a misdemeanor and his punishment assessed at three months in the county jail, and whereas, he has been sentenced to said term, and whereas, his service has been let to and he has been awarded to the custody of Edward Starns for three months, for the sum of $308.

"Now, therefore, know all men by these presents, that we the undersigned, Edward Starns as principal and ———————————— as sureties, are held and firmly bound unto the county of Texas in the sum of three hundred and eight ($308.00) dollars.

"The conditions of the above bond are such that if the said Edward Starns shall pay to the county of Texas on or before three months from this date and shall have the body of the said Robert Pipkin when and where this court may require, then the above obligation to be void, otherwise to remain in full force.

"ED. STARNS,                    (Seal)
"M. F. PIPKIN,                  (Seal)
"P. W. GROCE,                   (Seal)
"ROBT. LAMAR.                   (Seal)

"Approved this August 2, 1909.

"C. L. JOHNSON, P. J. Co. Court."

Afterward, on the 4th day of August, 1909, the sheriff of Texas county, James W. Cantrell, in obedience to the order of the county court, released the said Robert Pipkin from jail and from his custody and delivered him, under said contract, to the said Edward Starns.

The question presented by this record is whether the county court of Texas county had authority, under the facts shown, to enter into the contract with Edward

Starns for the employment of Robert Pipkin, a prisoner, and release him from the custody of the sheriff under the provisions of section 1791 of the Revised Statutes of 1899. This section is the only statute upon which the county court relies for its authority to make the contract in question.

Several objections are made to the issuance by this court of the writ of certiorari. It is urged, among others, that the authority of the Texas county court to make the contract for the services of the convict, Robert Pipkin, was discretionary, and that a superior court has no right, by certiorari, to control such discretion.

It is no doubt a well-established principle of law, sustained by an abundance of authorities in this and other States, that where an inferior tribunal or officer has jurisdiction to act and is invested with discretionary powers, such action, however improperly exercised, cannot be controlled by a superior tribunal. [In the Matter of the Saline County Subscription, 45 Mo. 52; State ex rel. v. Harrison, 141 Mo. 12; State ex rel. v. Reynolds, 89 S. W. 677; Journeay v. Brown, 28 N. J. Law (2 Dutch) 111; In re Lanehart, 52 N. Y. Suppl. 671, 32 App. Div. 4; State v. Second Judicial District of Silver Bow County, 48 Am. St. Rep. 682.] These cases, as will appear from examination, were decided upon a state of facts where the court or officer whose action was brought into question had jurisdiction to act and are all based on that assumption, and, of course, would apply in this case if an examination of the statute should show that the Texas County Court, in the proceedings under consideration, had jurisdiction. It would be a palpable absurdity to say that a court had unrestrained discretion to act in matters over which it had no jurisdiction.

The principle that certiorari is the proper remedy to restrain inferior courts or public officers when they act in excess of their jurisdiction seems to be settled in this State beyond further controversy. [State ex rel. v.

Smith et al., 176 Mo. 90, 1. c. 99; State ex rel. v. John D. Dowling et al., 50 Mo. 134, 1. c. 136; State ex rel. v. Switzler, 143 Mo. 287, 1. c. 310; State ex rel. v. Guinotte, 156 Mo. 513; State ex rel. v. Moniteau County Court, 45 Mo. App. 387; State ex rel. v. Selby, 133 Mo. App. 533; State ex rel. v. Lichta, 130 Mo. App. 284.]

This Court of Appeals has original jurisdiction to issue the writ of certiorari and other remedial writs and to hear and determine the same, and has a superintending control over all inferior courts of record in the counties of its district. [Constitution of Missouri, Amendment of 1884, Section 4; Section 1598, R. S. 1899; State ex rel. v. A. W. Allen, 45 Mo. App. 551; School District v. Charles Burris et al., 84 Mo. App. 654.]

The county courts of Missouri are creatures solely of statutory origin and have no common law or equitable jurisdiction. [State ex rel. v. Madison County Court, 135 Mo. 323, 1. c. 326.] The action of these courts is under the control of superior courts and is exercised by the writ of certiorari. [6 Cyclopedia of Law and Procedure, 737.]

Furthermore, we cannot accept the view that the writ of certiorari is a remedy of such limited powers that it is restricted to cases only where no appeal would lie or writ of error could issue. On the contrary, if a writ of certiorari, in point of promptness and completeness, would afford an adequate remedy for an excess of jurisdiction or the exercise by an inferior court or public officer of unauthorized powers, its employment is fully justified. [State ex rel. v. Guinotte, 156 Mo. 513, 1. c. 526-527; State ex rel. v. John D. Dowling et al., 50 Mo. 134, 1. c. 136.]

The right of this court to issue the writ is further challenged because of the provisions of section 5 of the Amendment to the Constitution of 1884. It is claimed that under this section of the Constitution, if Robert Pipkin was convicted of a felony, then the proceedings

of the Texas County Court were under the exclusive superintending control of the Supreme Court.

Section 5 provides that in all causes reviewable by the Supreme Court, appeals shall lie from the trial court directly to the Supreme Court and the Supreme Court shall have exclusive jurisdiction of such appeals, and in all such cases exclusively exercise superintending control over such courts. Section 12 of Article VI of the Constitution provides that appeals shall lie to the Supreme Court in an enumerated class of cases; among others, in cases involving title to real estate, and in all cases of felony.

As Robert Pipkin had been tried for a felony, convicted and sentenced, and upon appeal to the Supreme Court, the judgment of the trial court had been affirmed, we cannot conceive that the subsequent proceedings in the county court was in any way a trial of him for a felony, or that an appeal could have been taken from the decision of the county court to the Supreme Court. No case has been cited where such a conclusion has been sustained. That the county court in determining their right to hire out Pipkin should inquire whether he was convicted of a felony or a misdemeanor does not affect the jurisdiction of this court. The proceedings of the Texas County Court were in no way a trial and in no way determined the guilt or innocence of Robert Pipkin. That matter had already been determined by the circuit court of Texas county and its decision affirmed by the Supreme Court. It was no longer a matter open for trial or investigation and no such trial or investigation was had before the county court.

The facts as disclosed by this record, as previously stated, are as follows: Robert Pipkin was convicted under section 1838, Revised Statutes 1899, of the crime of carnally knowing an unmarried female of previous chaste character between the ages of fourteen and eighteen years, and his punishment duly assessed at

three months, imprisonment in the county jail; that he was committed to the sheriff of Texas county to serve out his sentence, and he was, at the time the contract in question was made, legally in the custody of the sheriff and jailer under this sentence.

The principle that underlies this case and upon which the issuance by this court of the writ of certiorari is to be determined, depends upon whether the statute gives the county court any authority to contract for the employment of said Robert Pipkin and remove him from the custody of the sheriff to that of the contractor.

Section 1791, under consideration, provides that the county court "shall have the power to provide for the employment of all persons convicted of a misdemeanor and who may be sentenced to imprisonment in the county jail, or who may be committed to the county jail for non-payment of fine." This provision of the statute, by its very terms, applies only to persons convicted of a misdemeanor, and under well known principles of interpretation, by naming one class of persons, excludes all others. By no process of legal construction can it be claimed that the authority here given extends to and includes persons convicted of felony.

The conviction of Robert Pipkin for the crime defined in section 1838 of the Revised Statutes of 1899, although the punishment assessed was imprisonment in the county jail, was a conviction for a felony and not a misdemeanor. Our statute in express terms defines the word "felony" so plainly as to leave no shadow of doubt as to its meaning. Section 2393 of the Revised Statutes of 1899 is as follows:

"Sec. 2393. *Felony defined.*—The term 'felony' when used in this or any other statute, shall be construed to mean any offense for which the offender, on conviction, shall be liable by law to be punished with death or imprisonment in the penitentiary and no other."

This section has been repeatedly construed by the courts of this State and it has been uniformly held that an offense. that may be punished by imprisonment in the penitentiary, although a fine or jail sentence may be inflicted, or is in fact inflicted, will not reduce the crime to the grade of a misdemeanor.   [State v. Reeves, 97 Mo. 668; State v. Johnson, 7 Mo. 183; State v. Ingram, Id. 293; State v. Green, 66 Mo. 631; State v. Clayton, 100 Mo. 516; State v. Gilmore, 28 Mo. App. 561; State v. Melton, 117 Mo. 618.]

Furthermore, the statute has also defined a misdemeanor.   Section 2395 of the Revised Statutes of 1899 is as follows:

"Section 2395.  *Misdemeanor.'*—The term 'misdemeanor,' as used in this or any. other statute, shall be construed as including every offense punishable by fine or imprisonment in a county jail, or both."

And further, to make assurance doubly sure, section 1838 of the Revised Statutes of 1899, under which Robert Pipkin was tried and convicted, declares that any person convicted of such crime "shall be deemed guilty of a felony."   Therefore, from every point of view, it is demonstrated that the county court undertook under section  1791 to provide for the employment of a person convicted of a felony, and in so doing it unquestionably acted in excess of its jurisdiction.

The safe-guarding of great public interests requires at our hands the development of another view of this case.   The protection of life, liberty and property, and the orderly and effective administration of the criminal law is always a matter of paramount importance to society.   It is this consideration that gives importance to an authoritative construction of sections 1791, 1792 and 1793 of the Revised Statutes of 1899 in order to determine whether they authorize county courts, by contract, to remove prisoners, duly sentenced, from the custody of the sheriff or jailer.

Section 1791, as stated, provides that county courts shall have the power to provide for the employment of persons convicted of a misdemeanor, but gives no specific authority to allow the contractor to take the prisoner out of the custody of the sheriff or jailer.

Section 1792 authorizes county courts to cause all persons legally convicted and serving sentences in the county jail or who are detained therein for non-payment of a fine, to work on the public roads or break rock for macadamizing purposes.

Section 1793 provides that the county court may order the sheriff or marshal to cause all such persons to be put to work on public roads, highways, turnpikes or other public works or buildings in said county.

In none of these statutes is there express authority given the county courts to remove prisoners from the custody of the sheriff or jailer and deliver them to any contractor. If such was the intention of the Legislature, such intention can only be arrived at by a judicial construction of these statutes. We are persuaded that such was not the intention of the Legislature in enacting these statutes. The practical effect of such a construction would be, in many cases, to commute the jail sentence of the prisoner to a discharge on payment of costs or giving security for costs. Certainly such a law would open the door to intolerable abuses and public scandals. If, as is claimed in this case, the contractor was a relative or friend of the prisoner and was allowed to have his custody, a convict who after a long and expensive trial had been finally convicted and sentenced to a term of imprisonment could, with the consent of the contractor, be turned loose upon society. He could expiate his crime against society while on fishing excursions and picnic trips. Again, there is no authority given by which the contractor, if disposed, could compulsorily detain the prisoner for whose services he had contracted, or in case of his flight, recapture the prisoner. It is not to be presumed that the

Legislature intended to enact such an absurd and unreasonable law, and to allow the county court by its contract to reward instead of punishing criminals. Courts will not construe laws so as to make their operation absurd and unreasonable. [State ex rel. v. St. L. & S. F. R. Co., 105 Mo. App. 207; Hilgert v. Barber Asphalt Paving Co., 107 Mo. App. 385; Citizens' National Bank v. Graham, 147 Mo. 250; City of St. Joseph v. Israel Landis, 54 Mo. App. 315.]

The effect and consequences of any proposed construction of a law may be considered in ascertaining the probable intention of the lawgivers. [Bowers v. Smith, 111 Mo. 45, l. c. 56; Kane et al. v. K. C. F. S. & M. R. Co., 112 Mo. 34; Choteau v. M. P. R. Co., 122 Mo. 375; State ex rel. v. Slover et al., 126 Mo. 652.]

Hence we conclude that under none of the sections of the statutes has a county court any authority by contract, to deprive the sheriff and jailer of the county of the custody of the convict, and all orders and contracts for the employment and working of prisoners, authorized by the sections of the statutes considered, must be made subject to this restriction.

It is therefore adjudged by this court that the contract made by the Texas County Court with Edward Starns for the employment and services of Robert Pipkin and the release of the said Robert Pipkin from the custody of the sheriff of Texas county, and all the orders and proceedings of such county court thereunder be quashed, vacated and annulled. All concur.