# THE STATE ex rel. JOHN T. BARKER, Attorney-General, v. GUSTAVUS A. WURDEMAN, Judge.

**In Banc, February 10, 1914.**

1. **CERTIORARI: To Review Habeas Corpus Proceeding.** Under the general superintending control over all inferior courts conferred by the Constitution upon the Supreme Court the writ of *certiorari* will issue from said court to review the proceedings in a *habeas corpus* case pending in the circuit court. At common law the issuance of the writ of *certiorari* was authorized before the proceedings instituted had culminated in a trial, order or judgment, and was based on the absence or an excess or a usurpation of jurisdiction on the part of the court from which the proceedings were removed; and under Missouri procedure the office of the writ is the same as at common law, and courts are authorized to adopt the principles and usages pertaining to it developed under the common law system, if in other respects consistent with existing statutes.

2. ———: **When Applied for by Attorney-General.** When the writ of *certiorari* is applied for by the Attorney-General it goes as a matter of course where there is apparent on the face of the application absence, excess or abuse of jurisdiction, or absence of the right of appeal, or lack of any other adequate remedy.

3. **HABEAS CORPUS: When Should Issue.** The writ of *habeas corpus* should never be suspended; but at the same time its issuance, in view of the liberal system of procedure against those accused of crime, should always be guided by a wise and wholesome discretion. A refusal of the writ under a proper state of facts is not a suspension of it, but the exercise of a judicial power with which the judiciary is clothed as a part of its inherent existence. Upon an allegation that the petitioner is being illegally restrained, the court or judge, in the exercise of a judicial function, will determine whether his individual liberty and the demands of justice, if he is being held under the warrant or process of a court, authorize the issuance of the writ.

4. ———: ———: **Invalid Statute.** Where the right to a writ of *habeas corpus* depends upon a statute collaterally involved, and the holding of the statute to be invalid will foreclose the right of petitioner to an appeal or writ of error, and constitute a final determination of the case, the writ should not be granted.

254 Mo. 36

5. ——: ——: **Grade of Offense: Constructive Detention.** In exercising the judicial function to issue a writ of *habeas corpus* the grade of the offense and the fact that petitioner is only constructively restrained, should be considered. In this case the record shows that the petitioner, after being arrested by the sheriff for selling liquor without a license in view of the officer, was, pending the *habeas corpus* proceeding, released on a nominal bond approved by the circuit judge, and on the same day he was arrested upon the filing of an information by the prosecuting attorney in the circuit court, charging him with selling liquor without a license, and upon the approval of a like bond to appear at the next term he was again released.

6. ——: ——: **Remedy at Trial.** If the invalidity of the statute collaterally involved and upon whose invalidity petitioner bases his right to be discharged may be raised by him in the trial of the case upon its merits, and no substantial right he possesses would be lost or lessened by a refusal of the writ of *habeas corpus*, it should be denied.

7. **SPECIAL STATUTE: St. Louis County Excise Commission.** *Held* by WALKER, J., with whom WOODSON, J., concurs, that the Act of March 25, 1913, Laws 1913, p. 199, creating an excise commission in counties of 75,000 inhabitants or more, adjoining a city of 500,000 inhabitants or more, is not a special or local law denounced by any section of the Constitution; but GRAVES and FARIS, JJ., are of the opinion that any ruling on the point would be *obiter*, since the validity of the statute could be determined on appeal if petitioner were convicted of violating it, and therefore is not involved in a *habeas corpus* proceeding; and LAMM, C. J., and BROWN and BOND, JJ., dissent. There is, therefore, no adjudication of the validity of the statute by a majority of the judges.

8. **HABEAS CORPUS: Criminal Case: Notice to Prosecutor.** The statute requiring a notice to the prosecuting attorney where the petitioner for a discharge by the writ of *habeas corpus* is held under criminal process should be complied with as a condition precedent to the legality of a hearing of the petition. But the proceeding will not be quashed for lack of formal notice where the prosecuting attorney had actual knowledge of the proceeding, and formal notice would have served no useful purpose.

*Certiorari.*

Record quashed.

*John T. Barker,* Attorney-General, *Ernest A. Green,* Assistant Attorney-General, *Arthur V. Lashly* and *George Barnett* for relator.

(1) *Certiorari* will issue by the Supreme Court to an inferior court in order to prevent an unregulated or unauthorized exercise of powers by such inferior court in a *habeas corpus* case. State ex rel. v. Dobson, 135 Mo. 1; State ex rel. v. Broaddus, 245 Mo. 123; State ex rel. v. Smith, 176 Mo. 99; State ex rel. v. Shelton, 154 Mo. 670; State ex rel. v. Lichta, 130 Mo. App. 284; State ex rel. v. Broaddus, 238 Mo. 189; State ex rel. v. Knutt, 207 Mo. 167.   (2) Under the allegations of the petition for *habeas corpus,* the circuit court exceeded its jurisdiction and exercised unauthorized powers in issuing the writ of *habeas corpus.* State ex rel. v. Dobson, 135 Mo. 1; R. S. 1909, secs. 2441, 2444; Ex parte Smotherman, 140 Ala. 168; Ex parte Roberts, 166 Mo. 207.   (3) The court acted without authority and in excess of its jurisdiction when it issued the writ of *habeas corpus* without notice of the application for the writ being given to the prosecuting attorney.   R. S. 1909, sec. 2509; Lowe v. Summers, 69 Mo. App. 637; Hurd on Habeas Corpus (2 Ed.), p. 227; People v. Carter, 48 Hun, 165; People v. Navagh, 41 Hun, 188; People v. Pelham, 14 Wend. 48; People v. Carsels, 5 Hill, 164; People v. Brennan, 61 Barb. 540; People v. Kehl, 15 Mich. 330; People v. Melody, 91 N. Y. App. 569.   (4) The petition for *habeas corpus* shows on its face that petitioner was arrested for the commission of a crime defined and created by law. R. S. 1909, secs. 7188, 7208.   (5) The constitutionality of the law with which petitioner was charged with violating is not assailed in this case, and, therefore, *habeas corpus* will not lie.  Ex parte Lucas, 160 Mo. 218; Ex parte Neet, 157 Mo. 527.   (6) On *habeas corpus,* courts cannot examine into matters of defense.   Ex parte Ruthven, 17 Mo. 541; Ex parte Bird, 19 Cal. 130.   (7)

The writ of *habeas corpus* was improvidently issued in this case because the time for which petitioner might be legally detained had not expired. R. S. 1909, secs. 2472, 4418. (8) The court exceeded its powers when it proceeded with the hearing of the *habeas corpus* case on its merits instead of quashing the writ when the return showed that the prisoner had been discharged by the sheriff on bail, and that he was no longer under restraint. Ex parte Caples, 58 Miss. 358; Ex parte Walker, 53 Miss. 366; Spiney v. Dahlman, 34 Neb. 692; Ex parte Whitney, 114 U. S. 564; Whitman v. Burgan, 70 Iowa, 161; In re Cole, 14 Tex. App. 579; Ex parte Lampert, 21 Hun, 154; 15 Am. & Eng. Ency. Law, 159; 2 Spelling on Extraordinary Remedies (2 Ed.), sec. 1192. (9) Right of prisoner to discharge on *habeas corpus* does not depend upon the legality or illegality of his original caption, but upon the legality or illegality of his detention at the time of the return. Ex parte Dye, 32 Mont. 132; Ekin v. United States, 142 U. S. 651; Iasege v. Van de Carr, 166 U. S. 391; Hurd on *Habeas Corpus* (2 Ed.), pp. 251, 252. (10) When the return of the officer, undenied, shows that he is holding the petitioner under a valid warrant issued by a court of competent jurisdiction, the court must remand the petitioner. Any other action would be in excess of its powers. R. S. 1909, sec. 2474. (11) The sheriff had the authority without a warrant to arrest the petitioner for the offense of selling liquor without a license committed in his presence. Bishop on Criminal Procedure (2 Ed.), 183; R. S. 1909, sec. 7210. (12) The sheriff had the right to detain the petitioner for a reasonable length of time for the purpose of obtaining process. 3 Cyc. 895; R. S. 1909, secs. 4418, 7210; Ex parte Smotherman, 140 Ala. 168. (13) The *habeas corpus* is an attempt to collaterally attack the right of the Excise Commissioners to hold office.

*A. E. L. Gardner* for respondent.

(1) The function, or office, of the writ of *certiorari,* when invoked to supervise proceedings by *habeas corpus,* is to prevent an unregulated and possibly scandalous exercise of jurisdiction by the subordinate court or officer authorized to grant the writ of *habeas corpus.* State ex rel. v. Broaddus, 245 Mo. 141; State ex rel. v. Dobson, 135 Mo. 1. (2) Under the Constitution and statutes in proceedings by *habeas corpus,* in issuing the writ and determining the questions arising under it, the circuit court has the same power, authority and jurisdiction as the Supreme Court, and has the same duties to perform. Ex parte Jilz, 64 Mo. 211; In re McDonald, 19 Mo. App. 373; Ex parte Creasy, 243 Mo. 698; R. S. 1909, secs. 2442, 2509. (3) The writ of *habeas corpus* is an immediate remedy for every illegal imprisonment. Commonwealth ex rel. v. Brower, 9 Külp (Pa.), 318; People ex rel. v. Wells, 68 N. Y. Supp. 59; People ex rel. v. Duryee, 188 N. Y. 445; People ex rel. v. Liscomb, 60 N. Y. 559, 18 Am. Rep. 211; Attorney-General v. Daboll, 90 Mich. 272; Ex parte Creasy, 243 Mo. 698; 2 Story on the Constitution (5 Ed.), sec. 1339; Cooley's Principles of Const. Law (2 Ed.), pp. 7, 300; 1 Kent Comm. (11 Ed.), Lecture 24, *pp. 27, 32; 3 Cooley's Bl. Comm. (3 Ed.), *pp. 129-138. (4) The writ of *habeas corpus* is a high prerogative writ given by the common law and of authority paramount to all other writs. By the production of the prisoner on a writ of *habeas corpus* the court acquires absolute jurisdiction of the person and the original cause of commitment is suspended until the cause is disposed of. The custody is not on the original warrant, but is under the authority of the writ of *habeas corpus.* State ex rel. v. Broaddus, 245 Mo. 140; Ex parte Creasy, 243 Mo. 679; Matson v. Swanson, 131 Ill. 255; State v. Sparks, 27 Tex. 705; In re Kaine, 55 U. S. 103; Barth v. Clise, 79 U. S. 401; Haley's Case,

1 Mod. 195; Tazacharly v. Baldo, 1 Salk. 352; 2 Story's Const. (5 Ed.), sec. 1339; Bacon's Abridgment, Habeas Corpus, B. 13. (5) (a) "In order to assert our rights, acknowledge our duties, and proclaim the principles on which our government is founded, we declare . . . that the privilege of the writ of habeas corpus shall never be suspended." Const. of Missouri, Bill of Rights, art. 2, Preamble, and sec. 26; State ex rel. v. Broaddus, 245 Mo. 139; 2 Story on the Constitution (5 Ed.), secs. 1338-1342. (b) What the Legislature may not do under the constitutional interdiction, no court should be bold enough to either dare to do or try to do. State ex rel. v. Broaddus, 245 Mo. 140; Ex parte Milligan, 71 U. S. 2; 1 Bailey on Habeas Corpus, sec. 3. (c) Suspension of the writ simply denies to the person arrested the privilege of its use to obtain his liberty. Anderson's Law Dictionary, pp. 500-501, "Habeas Corpus;" Cooley's Principles of Const. Law (2 Ed.), 300; 1 Cooley's Bl. Comm. (3 Ed.), *p. 135, note 16. (d) The enforced delay of over three months in the hearing and determination of the *habeas corpus* proceeding, coerced by the writ of *certiorari* issued herein, suspends the privilege of the writ of *habeas corpus,* impairs the substantial efficacy of that writ and curtails its efficiency. Constitution of Missouri, sec. 26, art. 2; State ex rel. v. Broaddus, 245 Mo. 139; Ex parte Gaume, 161 Mo. 390; Attorney-General v. Daboll, 90 Mich 272; 1 Bailey on Habeas Corpus, sec. 3; 1 Kent Comm. (11 Ed.), Lecture 24, *pp. 26-27, 32; 3 Cooley's Bl. Comm. (3 Ed.), *pp. 129-138. (e) Petitioner thereby is denied his day in court by a side stroke or by indirection. State ex rel. v. Broaddus, 245 Mo. 141; State ex rel. v. McQuillin, 246 Mo. 540.

WALKER, J.—This is a proceeding by *certiorari* instituted by the State, at the relation of the Attorney-General. The writ directed Gustavus A. Wurdeman,

Judge of Division No. 2 of the Circuit Court of St. Louis County, respondent, to certify to this court a true copy of the record in a *habeas corpus* proceeding then pending before him, in which Henry L. Algermissen was petitioner and the sheriff of St. Louis county was defendant. In obedience thereto, the respondent filed in this court a complete copy of said record, and thereafter, on the 3rd day of October, 1913, filed his motion to quash the writ of *certiorari* and to dismiss the cause.

The proceedings in the circuit court were as follows:

On July 18, 1913, the sheriff of St. Louis county arrested Henry L. Algermissen, charged with selling liquor without a license, the sale having been made in the view of the sheriff and another. Upon the arrival of the sheriff at the courthouse in Clayton with Algermissen in custody, about two hours after his arrest and before any formal charge had been preferred against him, a writ of *habeas corpus* was served on the sheriff commanding him to forthwith produce the body of Algermissen before the respondent and show by what legal authority he was holding him. The prosecuting attorney was not formally notified of the proceeding as required by section 2509, Revised Statutes 1909, but had actual knowledge of same. In compliance with the court's order the sheriff produced the body of Algermissen before the respondent, who at once admitted him to bail, conditioned upon his appearance before said circuit court in the *habeas corpus* proceedings on the 19th day of July, 1913, and ordered the sheriff on or before said day to make his return to the writ of *habeas corpus*. On July 18th, the prosecuting attorney filed an information in the office of the clerk of the circuit court, which was assigned to Division No. 1 of said court, charging said Algermissen with selling liquor without a license, and immediately thereafter, on the same day, a *capias* was is-

sued by the clerk and placed in the hands of the sheriff, commanding him to take Algermissen into custody. The sheriff arrested Algermissen under said *capias,* and the latter gave bond for his appearance in said Division No. 1 of the circuit court at the next term, or upon the setting of the case, to answer the information so filed by the prosecuting attorney, and the sheriff again released him and he is now at liberty. On July 19th, the sheriff filed his return to the writ of *habeas corpus,* in which he set out the following facts:

That he had arrested Algermissen for a misdemeanor, viz., selling liquor without a license, committed in his view; that he had surrendered him to the custody of the court; that he had subsequently arrested him by virtue of a *capias* issued by the clerk of the circuit court for the same offense; and that thereafter Algermissen was admitted to bail, released, and was not then in his custody.

No answer was filed to this return, and no motion was made to discharge the prisoner. Immediately after the filing and reading of the return, in Division No. 2 of said circuit court, before respondent as judge thereof, the court heard arguments by counsel of the respective parties as to the return, and as to whether the validity of the law creating the Board of Excise Commissioners was in issue in the *habeas corpus* proceedings, and held that the validity of the law was in issue, and continued the further hearing until August 5, 1913. On July 29, 1913, the petition for a writ of *certiorari* was applied for and granted by this court.

I.  *Certiorari to Review Habeas Corpus.*  Under the Constitution of this State (Art. 6, sec. 3, and sec. 8, Amdt. 1884), this court has a general superintending control over all inferior courts and as a means of maintaining same is clothed with power to issue writs of *habeas corpus, quo warranto, certiorari* and other

original remedial writs and to hear and determine same. At the common law the issuance of the writ of *certiorari* was authorized before the proceedings instituted had culminated in a trial, order or judgment, and was based upon the absence or an excess or usurpation of jurisdiction on the part of the court from which the proceedings were removed. [1 Tidd Pr. (4 Am. Ed.) 398; 6 Cyc. 737, 750, 770.] Under our procedure the office of the writ is the same as at common law, and our courts are authorized to adopt the principles and usages in regard to the writ as developed under the common law system, if in other respects consistent with the letter and spirit of existing statutes. [State ex rel. Harrison County Bank v. Springer, 134 Mo. 212, 222; State ex rel. v. Walbridge, 69 Mo. App. 657, 666, and cases; State ex rel. v. Walbridge, 123 Mo. 525, 537; State ex rel. v. Smith, 101 Mo. 174.] Under this general superintending power conferred by the Constitution it has been held by this court that the writ will issue to review the proceedings in a *habeas corpus* case. [State ex rel. v. Broaddus, 245 Mo. 123, 135; State ex rel. v. Dobson, 135 Mo. 1, 19.] A like rule prevails elsewhere. [Ex parte Montgomery, In re Knox, 64 Ala. 463; McLaren v. Brown, 34 Ga. 583.]

Where the writ is applied for, as it is here, by the chief law officer of the State, the Attorney-General, it goes as a matter of course (State ex rel. v. Dobson, 135 Mo. 1, 19) in the first instance, provided there is apparent in the application any one of the following requisites: 1st, absence, excess or abuse of jurisdiction (State ex rel. v. Broaddus, 238 Mo. l. c. 204; State ex rel. v. Reynolds, 190 Mo. 578; State ex rel. Knox v. Selby, 133 Mo. App. 552); 2nd, absence of the right of appeal (State ex rel. v. Broaddus, 245 Mo. l. c. 135; Ferguson v. Ferguson, 36 Mo. 197; Ex parte Jilz, 64 Mo. 205; Weir v. Marley, 99 Mo. 484, 488); and, 3rd, lack of any other adequate remedy (State ex rel. Iba

v. Mosman, 231 Mo. 474; State ex rel. v. Guinotte, 156 Mo. 513; State ex rel. Sanks v. Johnson, 138 Mo. App. 306).

The petition for *certiorari* being sufficient for the submission of the issues involved, its reproduction here is unnecessary, and the duty devolves on us to examine the record to determine whether or not the *habeas corpus* proceeding was authorized. [State ex rel. v. Broaddus, 245 Mo. 1. c. 140.] Petitioner's discharge on bail might pertinently be considered as a reason why the writ should not issue (3 Yeates R. 263; 1 Serg. & R. 356; Hurd, Hab. Corp. (2 Ed.), p. 201); but we have, in the interest of the petitioner, ignored this record fact, and have reviewed the case as though formal complaint had been filed against him before the issuance of this writ and that he was being detained by reason of such complaint.

II. *Habeas Corpus.* It may profit nothing to recount in this connection, the origin and history of the *Habeas Corpus* Act, first enacted (31 Car. II, c. 2), strange as it may seem, in one of the most corrupt reigns recorded in English history, the infamies of which the facile and suppliant pen of Hume, the artful and unscrupulous partisan of the House of Stuart, has not been able to gloss over; nor is it necessary to descant upon the constitutional value of this act which rendered the remedy against arbitrary imprisonment certain, short and readily obtainable, but introduced no new principle into the system of English jurisprudence, nor did it form such an epoch in the acquisition of national liberties as many writers from Blackstone to LAMM, C. J., in State ex rel. v. Broaddus, 245 Mo. 1. c. 139, have so eloquently represented. [2 Hallam, Con. Hist. 176; Creasy, Eng. Con., p. 269; Hurd, Hab. Corp. 83.]

Individual liberty has been of slow and perilous growth. The right of a freeman not to be detained

in prison except upon a criminal charge or conviction or for civil debt, did not have its origin in the *Habeas Corpus Act* adopted by Parliament in 1679, as popularly believed, but it had existed, although seemingly at times obliterated by tyranny, from the earliest records of the English law. The abuse and evasion of this right, more especially by the arbitrary proceedings of the Earl of Clarendon during the reign of Charles II., probably aroused the people, as oppression often does, to a livelier sense of the necessity of an express statute declaratory of the public will on the subject, than the imprisonment of the obscure individual Jenks, to which, as every student of English law knows, is oftentimes attributed the occasion of the enactment. The beneficial effect of this statutory declaration as affording a ready remedy against arbitrary and continued imprisonment is evident, but it did not blossom forth in one enactment, nor is it a fetich upon which adjectives should be exhausted or that veneration paid it which the wandering Israelites bestowed upon the cedar chest called the Ark of the Covenant. Recognizing, therefore, the remedial effect of the act, which has been adopted wherever the common law prevails, it should never be suspended, but at the same time its issuance, in view of our liberal system of procedure against those accused of crime, should always be guided by a wise and wholesome discretion.

While we agree with the learned Chief Justice, as stated in the Broaddus case, supra, that it is the duty of those "who attend as priests at the altar of justice to well see to it that the flame of the lamp of personal liberty is kept alive, well trimmed and brightly burning" (if the sacerdotal function, which we question, has any relation to that of the judiciary), we should also, in the exercise of a wise discretion, see to it that the light of this flame does not so blind the eyes of the judge issuing the writ, as to improperly influence his judgment.

We fully recognize the force of the constitutional provision (Sec. 26, art. 2, Constitution of Missouri) that "the privilege of the writ of *habeas corpus* shall never be suspended;" the refusal of the writ, however, under a proper state of facts, is not a suspension of same, but is the exercise of a power with which the judiciary is clothed as a part of its inherent existence. It must be remembered as was cogently said by SHERWOOD, J., in State ex rel. v. Dobson, 135 Mo. l. c. 10, that "the writ of *habeas corpus* is a writ of right, but not a writ of course" . . . That "the issuance of the writ is not a mere perfunctory operation; . . . to be 'had for the asking,' " but that "it is intended as a relief alone against unlawful imprisonment; and no imprisonment is unlawful when the process is a justification of the officer"—citing Com. ex rel. v. Lecky, 1 Watts, 67. Further, that "judicial discretion is as necessary to the issuance of the writ as in the issuance of any other writ whatsoever. It can only properly issue to one entitled to it, either under the common law or under the statute. Were it otherwise, the writ would descend from its high plane, and its issuance become a mere ministerial act which could be performed by the clerk of a court as well as by the judge." In harmony with this reasoning it was held in the same case (p. 18) that the statute (now Sec. 2497, R. S. 1909) was invalid which subjected a court or magistrate to a penalty for refusing to issue the writ; the court holding that the invalidity consisted in an interference by the Legislature with a judicial function which required the exercise of discretion in its performance and hence could not be abrogated by a statute.

The test, therefore, as to the right to this writ is the existence of such an imprisonment or detention, actual though it may not be, as deprives one of the privilege of going when and where he pleases (Hurd on Hab. Corp., pp. 200 et seq.); and upon such re-

straint being alleged, the court or judge will, in the exercise of discretion, determine whether the individual liberty of the petitioner and the demands of justice, if the petitioner is being held under the warrant or process of a court, authorize the issuance of the writ.

Conceding the sufficiency of the petition for *habeas corpus,* was the respondent, under the facts disclosed, by the record, authorized to issue the writ? The petitioner was charged with the commission of a misdemeanor, and the complaint was filed, charging him with this offense in the court of which the respondent was one of the judges. In addition, therefore, to the knowledge he obtained from the petition, as to the locus of the proceeding, he had actual knowledge not only of the filing of the complaint in his own court, as the same was then in session, but as to the actual character of the offense and nature of the detention.

The material allegation of the petition is that the petitioner is being held under an invalid statute—not the one it was alleged he had violated, but a statute creating an excise commission to regulate the granting of dramshop licenses in counties of the class to which St. Louis county belongs. The facts attending the application for the writ give color to the conclusion that the purpose of this proceeding, in form to secure the release of the petitioner, was in fact to test the validity of this statute. This aside, however, for we concern ourselves only with what is shown by the record.

We do not question the right of a petitioner to the writ if the statute under which he is held is unconstitutional (Ex parte Harrison, 212 Mo. 88, 16 L. R. A. [N. S.] 950); but where, as in this case, the right depends upon a statute collaterally involved, and the holding of same to be invalid will foreclose the right to an appeal or writ of error, and constitute a final determination of the case, the writ should not be

granted; the grade of the offense and the constructive detention of the petitioner should also be taken into consideration—the record showing petitioner's release on a nominal bond approved by the respondent, pending the *habeas corpus* proceeding, and the approval of a like bond upon his being charged in a formal complaint with the same offense. That the invalidity of the statute in question may be raised by the petitioner in a trial of the case upon its merits, and that no right he possesses under the law is lost or would have been lessened by the refusal of the writ, are also factors which the respondent should have weighed in determining whether the issuance of the writ was the exercise of a wise discretion; in view, therefore, of the fact that no substantial right of the petitioner would have been jeopardized by the refusal of the writ, we are of the opinion it was improvidently issued.

III. *The Statute.* Despite the fact that we hold the writ of *habeas corpus* to have been improperly issued, the record sufficiently presents petitioner's grounds as to the invalidity of the statute (Laws 1913, pp. 199-202, approved March 25, 1913), creating the excise commission in St. Louis county and other counties of like class, to entitle same to our consideration and thus finally determine the validity of this statute. It is challenged in the copy of the petition for *habeas corpus* set forth in respondent's return for the following reasons:

"(1) Because said act is in violation of that portion of article 4, section 53, of the Constitution of Missouri, which provides that the General Assembly shall not pass any local or special law 'regulating the affairs of counties, cities, townships, wards or school districts.'

"(2) Because said act violates that portion of article 4, section 53, of the Constitution of Missouri,

which provides that the General Assembly shall not pass any local or special law 'creating offices, or prescribing the powers and duties of officers in counties, cities, townships, election or school districts.'

"(3) Because said act violates the provisions of article 4, section 53, of the Constitution of Missouri, which prohibits the Legislature from passing any special law granting to any corporation, association or individual any special or exclusive right, privilege or immunity.

"(4) Because said act violates section 53 of article 4 of the Constitution of Missouri, which prohibits the General Assembly from passing any local or special law where a general law can be made applicable.

"(5) Because said act violates section 30 of article 2 of the Constitution of Missouri, which provides that no person shall be deprived of life, liberty or property without due process of law.'"

IV. *Title.* The title of the act is sufficiently clear and comprehensive to define its purpose and prescribe the manner in which it shall be enforced. [State ex rel. Bixby v. St. Louis, 241 Mo. 231; State ex rel. v. Gordon, 223 Mo. 1.] No valid objection can, therefore, be urged against the act in this respect.

V. *Validity of Statute.* The classification made by the act is as to counties of 75,000 inhabitants or more, adjoining a city of 500,000 inhabitants or more. The fact that St. Louis county was at the time of said enactment the only county having a population of 75,000 or more, adjacent to a city (St. Louis) of 500,000 inhabitants or more, and that said city was the only one in the State then having the designated population, does not render the act obnoxious to the State Constitution in regard to special legislation. The act under its terms will apply with equal force in the future to other counties or cities which by increase in their populations may come within the purview of the

statute. [State ex rel. v. Clayton, 226 Mo. 292, 307.] In other respects the classification is not unreasonable as to the subjects to which it applies and its application is uniform as to the classes embraced within its provisions. [State v. Parker Dist. Co., 236 Mo. 219, 281; State v. Brodnax, 228 Mo. 25, 45, 137 Am. St. 613, affirmed Brodnax v. State, 219 U. S. 285, 55 Law Ed. 219.] Thus much in regard to the validity of the statute considered generally without reference to the subject legislated upon.

In its general features and with reference to the subject of legislation the statute is similar to that providing for an excise commissioner to regulate the issuance of dramshop licenses in cities having a population of 300,000 or more (Art. 2, chap. 63, R. S. 1909). This statute after a careful review by this court in State ex rel. v. Bell, 119 Mo. 70, 76, was declared not to be a local or special law, and hence not violative of section 53 of article 4 of the Constitution of Missouri, on the authority of State ex rel. v. Miller, 100 Mo. 439, 447, in which the cases bearing on this subject are elaborately discussed. [See also State ex rel. v. County Court, 128 Mo. 427, 443.] By parity of reasoning, therefore, the act under review in the instant case may be held to violate no provision of the organic law.

The record shows that the Board of Excise Commissioners, under the authority of section 4 of the act (Laws 1913, p. 200), revoked the petitioner's license to sell liquor. If the statute is valid, and this is the only question under consideration, ample power was lodged in the board to revoke the license, which was in no sense property, but a mere permit issued in the exercise of the police power, to do what, in the absence of the permit, would have been illegal. No property rights being involved calling for the exercise of a judicial function in the revocation of the license, the excise board acted in a ministerial capacity in revoking the permit which the licensee had vio-

lated. The right of revocation, therefore, is as much
a part of the license as though it had been written into
it, and the licensee must be held to have accepted it
upon these terms and conditions. [State v. Seebold,
192 Mo. 720, 726; Higgins v. Talty, 157 Mo. 280, 287.]
The license not being property, but a mere privilege,
it was subject to revocation on such conditions as the
State, through its law-making power, saw fit to im-
pose, and objections will not be heard questioning
the constitutionality of the law for the reasons urged
in the Seebold case, supra, first, because such revoca-
tion is not a punishment, and, second, because no prop-
erty right is thereby affected, and the licensee has no
such interest in defeating the law as will be considered
by this court. This disposes of the objection to the
validity of the statute based on section 30, of article
2 of the Constitution of Missouri, in regard to due
process.

State ex rel. v. Turner, 210 Mo. 77, in which the
Seebold case, supra, was, in an exhaustive opinion by
WOODSON, J., reviewed and distinguished, is not an
authority against the conclusion here reached. In the
Turner case, mandamus was sought to compel the
granting of a license to sell liquors in the city of Co-
lumbia. The provisions of the general law had been
complied with by the applicant, and in addition he had
procured the required two-thirds majority of the qual-
ified taxpayers to his petition, which rendered the
granting of the license mandatory by the county court,
in the absence of other legal objection. The court re-
fused the license on the ground that a statute called
the "Five-Mile Law" prohibited the granting of dram-
shop license within that distance of an educational in-
stitution having enrolled therein 1500 or more students
—the State University then having that enrollment
and being located in Columbia. This court held the
distance statute invalid as special legislation, and or-

dered the issuance of the writ; the basis of the court's conclusion, the soundness of which we do not question, being that the general law having been fully complied with, even as to its mandatory requirement, and the distance law being invalid, there was no alternative left the county court but to grant the license. The Turner case, therefore, is not parallel in its facts with the Seebold and Talty cases, supra, and hence not in conflict with the conclusions reached in the case at bar.

VI. *Notice of Writ.* Relator contends that the *habeas corpus* proceeding was void for want of notice, section 2509, Revised Statutes 1909, requiring notice to the prosecuting attorney where the petitioner is held under criminal process.

Important as is the matter to a petitioner that he should be speedily released if illegally imprisoned, it is also of much concern to the public, where one is held on a charge of crime or misdemeanor, that the prosecuting attorney should have notice of the application for or the pendency of the writ in order that the possibilities of an escape from merited punishment may not result from an *ex parte* hearing. The necessity of notice in *habeas corpus* proceedings is emphasized by TILGHMAN, C. J., in an early Pennsylvania case, Hecker v. Jarret, 3 Binn. (Pa.) 404, in which the writ was sought in a civil proceeding, the language of the court being as follows: "The power of discharging from an execution is a very important one, and should be exercised with great discretion. . . . I will not say that the judge had no right to discharge from imprisonment in a case of this nature. I am of opinion, however, that granting his right to discharge, his proceedings were void for want of notice to the plaintiff in the execution."

In New York, as here, notice of proceedings is required to be given the public prosecutor. It is held there, in the absence of such notice, that a judge has

State ex rel. v. Wurdeman.

no right, where the detention is under criminal process, to discharge the prisoner. [People v. Carter, 48 Hun, 165, 167; People v. Cassels, 5 Hill, 164.]    See, also, In the Matter of Leggat, 162 N. Y. l. c. 443, where the detention was in a civil case.

In the instant case the prosecuting attorney was actually cognizant of the proceeding and the formal notice required by the statute was, therefore, unnecessary, and would have served no useful purpose. We would not be understood as holding, however, where actual notice did not exist, that the statute should not be complied with as a condition precedent to the legality of the hearing.

It follows from the reasons stated that the *habeas corpus* proceeding should be quashed, and it is so ordered.

*Woodson, J.,* concurs; *Graves* and *Faris, JJ.,* concur in separate opinion by *Graves, J.; Lamm, C. J.,* and *Brown* and *Bond, JJ.,* dissent.

GRAVES, J.—I concur in all of this opinion except that portion which discusses the constitutionality of the law which creates the excise commission for St. Louis county. As to the conclusion reached in this portion of the opinion I simply desire to express no opinion at this time nor in this case. This because it is not necessary to a determination of the instant case. In the instant case petitioner's petition for the writ of *habeas corpus* is based on the sole ground of the invalidity of this Act of 1913. He does not challenge the validity of the law under which he was actually arrested and in legal custody. He, on the other hand, challenges the validity of a law which may be incidentally involved in the trial of his criminal charge, but which itself is not at the base of such criminal charge. The writ of *habeas corpus* may, and has been issued,

where the validity of the law forming the basis of the criminal charge is attacked in the application for the writ, but it is going too far to say that the judge trying a *habeas corpus* case can adjudicate the validity of laws not at the basis of the criminal charge. Petitioner in this case only sought such an adjudication. He so limited the matter in his petition for discharge. It was but a shrewd attempt to have litigated a question which cannot be litigated in a *habeas corpus* case, and in so far as my brother's opinion touches this question, I most heartily concur.

That question disposes of this case without further ado. Let the validity of the law urged be decided in a case wherein it comes up as a vital issue, so that our pronunciation thereon may be more than mere *obiter*. My brother reasons well upon the extraneous law, and it may be when presented in a proper case that I will concur in his views, but I prefer to express no opinion now. I, therefore, concur in the result reached, and in the portion of the opinion as above indicated. *Faris, J.,* concurs in these views.